**GREENBERG TRAURIG, LLP**
Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
Adam M. Korn (SBN 333270)
*Adam.Korn@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700

*Attorneys for Defendant 7 Cups of Tea, Co.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAYLYN GARLAND and CIERRA SERRANO individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>7 CUPS OF TEA, CO. a Delaware corporation,<br><br>*Defendant*. | CASE NO. 5:23-cv-04492-PCP<br>Assigned to Hon. P. Casey Pitts<br><br>**DEFENDANT 7 CUPS OF TEA, CO.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Rebekah S. Guyon; Request for Judicial Notice; Proposed Order]<br><br>Action Filed:     Aug. 30, 2023<br><br>Date:     Jan. 11, 2024<br>Time:     10:00 a.m. |

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2   PLEASE TAKE NOTICE that on January 11, 2024 at 10:00 a.m., or as soon thereafter as the matter

3   may be heard before the Honorable Judge P. Casey Pitts in the United States District Court for the Northern

4   District of California, Courtroom 8, located on the 4th Floor of the Robert F. Peckham Courthouse, at 280

5   South 1st Street, San Jose, California, Defendant 7 Cups of Tea, Co. will and hereby does move for the

6   court to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant 7

7   Cups of Tea, Co. moves to dismiss the Complaint on the grounds that Plaintiffs' claims are time-barred by

8   the statute of limitations and, even if their claims were not time-barred, Plaintiffs fail to state a claim upon

9   which relief may be granted. This motion is based on this Notice of Motion and Motion, the accompanying

10  Memorandum of Points and Authorities, the pleadings and papers filed herein, and the argument of counsel

11  at the time of any hearing.

12

## STATEMENT OF RELIEF SOUGHT

13  7 Cups of Tea seeks an order dismissing Plaintiffs' Complaint in its entirety under Fed. R. Civ. P.

14  12(b)(6) because the claims Plaintiffs allege are time-barred, and Plaintiffs fail to allege sufficient facts to

15  state a plausible claim under any theory alleged.

16

17  DATED:  November 13, 2023          GREENBERG TRAURIG, LLP

18

19                    By:    _/s/ Rebekah S. Guyon_
                             Rebekah S. Guyon
20                           Attorneys for Defendant 7 Cups of Tea, Co.

21

22

23

24

25

26

27

28

---

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.   INTRODUCTION .......................................................................................................... 1

II.  FACTUAL BACKGROUND ......................................................................................... 5

    A.   The 7 Cups Platform And Disclosures Regarding Collection Of Website Activity ......... 5
    B.   Plaintiffs' Claims ................................................................................................. 6
    C.   Use Of Google Analytics On The Platform ....................................................... 6

III. PLAINTIFFS FAIL TO STATE A CLAIM ................................................................ 7

    A.   Legal Standards ................................................................................................... 7
    B.   Plaintiffs' Claims Are Time-Barred .................................................................. 7

        1.   Plaintiffs' Claims All Arise From Online Activity Six Years Before Filing
             Suit ........................................................................................................ 7

    C.   Plaintiffs' Claims Are Not Saved By Discovery Rule Or Equitable Tolling ................... 9
    D.   7 Cups Did Not Invade Plaintiffs' Privacy Or Seclusion .............................. 11
    E.   Plaintiffs Allege No Loss Or Damages ........................................................... 12

        1.   Plaintiffs Lack Statutory Standing Under The UCL And The CLRA ................. 12
        2.   Plaintiffs Allege No Loss Under The CDAFA ..................................... 13
        3.   Plaintiffs Allege No Damages To Support Contract And Misrepresentation
             Claims ................................................................................................ 14

    F.   Plaintiffs' Adequate Remedy At Law Forecloses Their UCL And CLRA Claims ......... 15
    G.   Plaintiffs Fail To State A Claim Under The Wiretap Act Or CIPA .............................. 16

        1.   7 Cups' Consent To The Recording Bars Plaintiffs' Wiretap Act Claim ............ 16
        2.   Plaintiffs Fail To Plead Claims Under The Wiretap Act And CIPA Section
             631 .................................................................................................... 16
        3.   Internet Communications Are Not "Confidential" Under CIPA Section 632 ..... 18
        4.   CIPA Section 632.7 Only Applies To Communications Between
             Telephones ........................................................................................ 18

    H.   Plaintiffs Have No Claim Under The CMIA ................................................... 19
    I.   Plaintiffs Have Not Alleged An Unauthorized Access Under The CDAFA ................ 20
    J.   Plaintiffs Fail To State A Claim for Negligent Misrepresentation ................ 21
    K.   Plaintiffs Have No Implied Contract Claim .................................................... 21
    L.   Unjust Enrichment Is Not A Cause Of Action ............................................... 22
    M.   Plaintiffs' Consent Bars Their Claims ........................................................... 22

IV.  CONCLUSION ............................................................................................................ 23

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
  223 F.3d 1010 (9th Cir. 2000) ................................................................................ 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 7

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................................. 8, 17

*Brown v. Madison Reed, Inc.*,
  622 F. Supp. 3d 786 (N.D. Cal. 2022) ................................................................ 10

*Byars v. Hot Topic, Inc.*,
  No. ED-CV-22-1652-JGB-KKX, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ........................... 18

*Calhoun v. Google LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021) .................................................................. 8

*Campbell v. Facebook, Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014) .............................................................. 3, 18

*Casaretto v. Coldwell Banker Realty*,
  No. 10-CV-00509-LHK, 2011 WL 1576780 (N.D. Cal. Apr. 26, 2011) ......................... 8

*Cline v. Reetz-Laiolo*,
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) ............................................................... 18

*Cottle v. Plaid Inc.*,
  536 F. Supp. 3d 461 (N.D. Cal. 2021) ................................................................. 14

*Erhart v. Bofl Holding, Inc.*,
  269 F. Supp. 3d 1059 (S.D. Cal. 2017) ................................................................ 20

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................. 13

*Facebook, Inc. v. Power Ventures, Inc.*,
  No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ........................... 20

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
  771 F.3d 1119 (9th Cir. 2014) ............................................................................. 15

*Gardiner v. Walmart, Inc.*,
  20-CV-04618-JSW, 2021 WL 4992539 (N.D. Cal. July 28, 2021) ............................ 15

*In re Gilead Scis. Secs. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................... 7

*In re Google Inc. Gmail Litig.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .................................................................. 18, 22

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................................ 11

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................................................ 3, 17

*Guar. Tr. Co. of N.Y. v. York*,
326 U.S. 99 (1945) ............................................................................................................ 15

*Guzman v. Polaris Industries Inc.*,
49 F.4th 1308 (9th Cir. 2022) .......................................................................................... 15

*Hakimi v. Societe Air France, S.A.*,
2018 WL 4826487 (N.D. Cal. Oct. 4, 2018) ................................................................... 8, 9

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......................................................................... 12

*Huluwazu v. Snyder*,
No. 17-CV-03386-LHK, 2017 WL 5991865 (N.D. Cal. Dec. 4, 2017) ........................... 8

*Hypertouch, Inc. v. Azoogle.com, Inc.*,
No. C-08-4970 MMC, 2009 WL 734674 (N.D. Cal. Mar. 19, 2009)............................... 9

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......................................................................... 2, 12

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ................................................................ 13

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................................... 12

*Ji v. Naver Corp.*,
No. 21-cv-05143, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022).................................... 12

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........................................................................................... 3, 16

*Lauter v. Anoufrieva*,
2011 WL 13175659 (C.D. Cal. Nov. 28, 2011)................................................................ 8

*Lewis v. Wachovia Mortg.*,
No. 11-CV-122-H (RBB), 2011 WL 13356106 (S.D. Cal. June 6, 2011)......................... 14

*Licea v. Cinmar, LLC*,
No. CV 22-6454-MWF, 2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) ........................... 3, 18

*Licea v. Vitacost.com, Inc.*,
No. 22-CV-1854-RSH-WVG, 2023 WL 5086893 (S.D. Cal. July 24, 2023) ................... 18

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......................................................................... 11

*Martin v. Sephora USA, Inc.*,
No. 122CV01355JLTSAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ..................... 19

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ................................................................................ 7

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016) ................................................................................ 2

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ........................................................ 4, 20

*Nowak v. Xapo, Inc.*,
    No. 5:20-cv-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ...................... 14

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...................................................... 13, 14

*Plumlee v. Pfizer, Inc.*,
    No. 13-CV-00414-LHK, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ........................ 10

*Quigley v. Yelp*,
    No. 17-CV-03771-IRS, 2018 WL 7204066 (N.D. Cal. Jan 22, 2018) .......................... 16

*Rodriguez v. Google LLC*,
    No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ......................... 3, 16

*Romo v. Wells Fargo Bank, N.A.*,
    No. 15-CV-03708-EMC, 2016 WL 324286 (N.D. Cal. Jan. 27, 2016) ........................ 9

*Rosenow v. Facebook, Inc.*,
    No. 19-CV-1297-WQM-MDD, 2020 WL 1984062 (S.D. Cal. April 7, 2020) .............. 16, 17

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) ...................................................... 12

*Shay v. Apple Inc.*,
    20CV1629-GPC(BLM), 2021 WL 1733385 (S.D. Cal. May 3, 2021) .......................... 16

*Smith v. Facebook, Inc.*,
    745 F. App'x (9th Cir. 2018) ............................................................ 4, 22

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................ 3, 15

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ........................................................ 13

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
    313 F. Supp. 3d 1056 (N.D. Cal. 2018) ...................................................... 14

*Underhill v. Kornblum*,
    No. 16-CV-1598-AJB-WVG, 2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) .................. 16

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ............................................................ 4

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2007) ............................................................ 12

*Valenzuela v. Keurig Green Mountain, Inc.*,
    No. 22-CV-09042-JSC, 2023 WL 3707181 (N.D. Cal. May 24, 2023) ........................ 19

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

*Williams v. DDR Media, LLC*,
   No. 22-CV-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ............................................ 18

*Wilson v. Rater8, LLC*,
   20-CV-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ............................................. 19

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................................... 12, 16

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) .................................................................................... 8

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ..................................................................................... 3, 12, 17

**State Cases**

*Aron v. U-Haul Co. of Cal.*,
   143 Cal. App. 4th 796 (2006) ............................................................................................. 13

*Bank of the W. v. Superior Court*,
   2 Cal. 4th 1254 (1992) ..................................................................................................... 15

*Cadlo v. Owens-Illinois, Inc.*,
   125 Cal. App. 4th 513 (2004) ............................................................................................... 4

*Chrisman v. City of Los Angeles*,
   155 Cal. App. 4th 29 (2007) ......................................................................................... 20, 21

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
   35 Cal. 3d 197 (1983) ...................................................................................................... 21

*De Havilland v. FX Networks, LLC*,
   21 Cal. App. 5th 845 (2018) ........................................................................................... 4, 22

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ........................................................................................... 13

*Eisenhower Med. Ctr. v. Sup. Ct.*,
   226 Cal. App. 4th 430 (2014) ............................................................................... 4, 19, 20

*Folgelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011) ............................................................................................. 11

*Foster v. Sexton*,
   61 Cal. App. 5th 998 (2021) ............................................................................................... 21

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal.4th 797 (2005) ................................................................................................... 9, 10

*Heritage Pac. Fin., LLC v. Monroy*,
   215 Cal. App. 4th 972 (2013) ............................................................................................. 22

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009) ........................................................................................... 2, 11, 12

*Hill v. Nat'l Collegiate Athletic Assn.*,
   7 Cal. 4th 1 (1994) ........................................................................................................ 11

v

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

*Jacome v. Spirit Airlines Inc.*,
    No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ............................ 17, 22

*Korea Supply Co. v. LockheedMartin Corp.*,
    29 Cal. 4th 1134 (2003) ..................................................................................................... 15

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (2011) ........................................................................................................... 12

*Lazar v. Super. Ct.*,
    12 Cal. 4th 631 (1996) .................................................................................................. 4, 21

*Paduano v. Am. Honda Motor Co., Inc.*,
    169 Cal. App. 4th 1453 (2009) ........................................................................................... 13

*People v. Childs*,
    220 Cal. App. 4th 1079 (2013) ........................................................................................... 20

*Ribas v. Clark*,
    38 Cal. 3d 355 (1985) ....................................................................................................... 17

*Scott v. JPMorgan Chase Bank, N.A.*,
    214 Cal. App. 4th 743 (2013) ............................................................................................. 21

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) ...................................................................................................... 11

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) ...................................................................................................... 11

*Troyk v. Farmers Grp., Inc.*,
    171 Cal. App. 4th 1305 (2009) ........................................................................................... 13

*Warden v. Kahn*,
    99 Cal. App. 3d 805 (1979) ............................................................................................... 17

**Federal Statutes**

18 U.S.C. § 2510(8) ................................................................................................................ 17

18 U.S.C. § 2520(e) .................................................................................................................. 8

Federal Wiretap Act, 18 U.S.C § 2510, *et seq.* ........................................................................ 3, 8

**State Statutes**

Cal. Bus. & Prof. Code § 17204 ............................................................................................... 12

Cal. Bus. & Prof. Code § 17208 ................................................................................................. 9

Cal. Civ. Proc. Code § 338(a) .................................................................................................... 8

Cal. Civ. Proc. Code § 339 ........................................................................................................ 8

Cal. Civ. Proc. Code § 340(a) .................................................................................................... 9

Cal. Code Civ. Proc. § 1780(a) ................................................................................................. 13

Cal. Penal Code § 502(b)(1) ..................................................................................................... 20

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

Cal. Penal Code § 502(c) ............................................................................................. 4, 20

Cal. Penal Code § 502(e)(1) ............................................................................................. 14

Cal. Penal Code § 502(e)(5) ............................................................................................... 8

Cal. Penal Code § 631 .............................................................................. 3, 16, 17, 18

Cal. Penal Code § 631(a) ............................................................................................. 16, 17

Cal. Penal Code § 632 ..................................................................................................... 3, 18

Cal. Penal Code § 632.7 ......................................................................................... 3, 18, 19

California Comprehensive Computer Access and Fraud Act, Cal. Penal Code § 502 ............................. 3

California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* .............................................. 3

California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.* .......................................................... 3

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ...................................... 3

Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.* .................................................. 4

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 4, 7

**Other Authorities**

*Usage statistics and market share of Google Analytics for websites*, W3 Techs Web
   Technology Surveys, https://w3techs.com/technologies/details/ta-
   googleanalytics#:~:text=Google%20Analytics%20is%20used%20by,is%2054.6%25%
   20of%20all%20websites. (last visited Nov. 13, 2023) ....................................................................... 6

www.7cups.com .................................................................................................................. 5

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Almost seven years after first using Defendant 7 Cups of Tea, Co.'s ("7 Cups") online mental health services platform (the "Platform"), Plaintiffs Caylyn Garland ("Garland") and Cierra Serrano ("Serrano") filed suit based on a scandalous and unsupported conjecture that all of their online conversations about their generalized "mental health concerns" were allegedly disclosed without their consent to Google for commercial exploitation. Compl. ¶ 23. The crux of Plaintiffs' Complaint is that members' (i) "information regarding *therapists*"—*not* regarding the members themselves—"with whom users are seeking therapy"; (ii) the date and time "when a patient connects with a therapist and the name of that therapist"; (iii) members' "activity" in the Platform's forums (i.e., topics and threads clicked on in a forum, *id*. ¶ 36); and (iv) members' "page views" on 7 Cups' Platform—were provided to Google, allegedly in violation of 7 Cups' assurance that "it would keep their health data private." *Id*. ¶¶ 1, 23-24. They allege this disclosure to Google along with an IP address associated with their device, "harmed Plaintiffs by among other things, diminishing the value of Plaintiffs' personal health information" and by allowing Google (via its analytics tool Google Analytics) to "target and profile Plaintiffs with unwanted and/or harmful content." *Id*. ¶¶ 1, 24-25. But 7 Cups does not take out advertisements for its services—it is a free platform that connects people with online emotional support, whether in the form of online therapy referrals, or simply through the community of other 7 Cups members who will listen to a member at no cost. *E.g.*, Compl. ¶ 12.

Plaintiffs insinuate that they began noticing advertisements related to their chat conversations with volunteer listeners or licensed therapists, but do not plausibly allege that those ads resulted from their use of 7 Cups because they do not allege (and it is not true) that Google received the transcripts or contents of any chats Plaintiffs had via 7 Cups or with a therapist. Compl. ¶ 49. Indeed, this accusation is belied by their own allegations of fact and numerous images demonstrating, on a technical level, that Google Analytics only receives searches and page clicks, *not* conversations.

Moreover, their allegation that 7 Cups never informed them that their interactions on the Platform would be shared with Google is not presumed true. *See* Compl. ¶ 1. The Platform's Privacy Policy in effect at the time they signed up expressly disclosed the use of cookies and other technologies like Google

Analytics and the collection of the same interactions at issue here for "marketing" purposes.[1] *Compare id.* ¶¶ 1, 23-24, 36 *with* Request for Judicial Notice ("RJN"), Ex. 1 at 3 ("We log web browser information (e.g., [IP] addresses [ ]) and other usage information . . . such as page view tallies, time spent on each page, geographic location information, page browsing information, [and] subject matter browsing information") ("We use browser information, cookies and pixel tags to determine whether a communication service or marketing material should be deployed on your browser" and "to determine how you arrived at 7 Cups [ ] Platform[ ] . . . to deliver marketing or other materials to you on behalf of third parties[.]").

But even if their consent weren't sufficient to warrant dismissal, Plaintiffs' claims face an insurmountable hurdle: ***all of their claims are time-barred***. Although they devote many pages of the Complaint describing what *could've* been disclosed from *other* members of the putative class, they themselves only allege active memberships with the Platform ***no later than 2017***, *see* Compl. ¶¶ 41, 51-52; Serrano's time as a volunteer listener only implicates the personal health information of <u>other members</u> not named as plaintiffs here, <u>not</u> her own, *see id.* ¶ 57. Of the twelve causes of actions alleged, the longest statute of limitations period is no more than four years, at least two years too late to cover Plaintiffs' alleged claims. Further, they have failed to allege anything that could require the statute of limitations to be tolled.

Statute of limitations aside, numerous other deficiencies are fatal to their dozen total claims ranging from privacy torts, common law claims like misrepresentation, unjust enrichment, and breach of implied contract, and myriad violations of federal and California state statutes.

**First**, 7 Cups did not disclose anything private. The disclosure of their devices' IP address along with their undescribed page clicks and searches to Google (Compl. ¶¶ 1, 23-24, 31-38)—so that 7 Cups could improve the functionality of, and monitor traffic on, its Platform—is not a constitutional invasion of Plaintiffs' privacy (Claim 1) or intrusion upon their seclusion (Claim 2). Their claims fail because (1) they had no reasonable expectation of privacy in their IP address, search queries, and page clicks provided to access 7 Cups' services and (2) 7 Cups' acquisition of information that they voluntarily provided is not an egregious breach of social norms. *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009).

---

[1] "An Internet 'cookie' is a small text file that a web server places on a user's computing device." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 268 (3d Cir. 2016).

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

**Second**, nearly half their claims fail for failure to allege a plausible loss, damage, or harm. Plaintiffs fail to plead a cognizable loss that could support statutory standing under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL"), the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA"), and the California Comprehensive Computer Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA") (Claims 3, 6, and 11). Similarly, Plaintiffs have not pled any plausible damages in support of their claims for breach of implied contract or negligent misrepresentation (Claims 4 and 12).

**Third**, Plaintiffs' Complaint—by seeking statutory and actual damages—forecloses any claim under the UCL and CLRA (Claims 3 and 6), which provide only equitable remedies. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020).

**Fourth**, Plaintiffs have not alleged a plausible violation of the Federal Wiretap Act, 18 U.S.C § 2510, *et seq.* (Claim 7) or the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.* (Claim 8 [CIPA §§ 632 and 632.7] and Claim 10 [CIPA § 631]). The Federal Wiretap Act claim only requires one-party consent, and 7 Cups' consent to any recording or sharing of Plaintiffs' information is alone dispositive of this claim. *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022). Similarly, their CIPA § 631 claim fails because that section does not prohibit a party to a communication—like 7 Cups—from recording it, and sharing it after it is recorded. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021). Their Section 631 claim also fails because CIPA prohibits only the *interception* of the *contents* of a communication. Plaintiffs allege an acquisition by Google long after the communications were received on servers supporting the Platform, which is not an interception contemporaneous with transmission. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). "[R]ecord information," *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014), such as the clicks, search selections and text searches, and pages and content viewed that Plaintiffs claim were acquired, is not actionable. As courts in this District have recognized, "Internet-based communications are not 'confidential' within the meaning of section 632[.]" *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (collecting cases). Finally, CIPA § 632.7 only applies to the alleged recording of a communication between <u>two telephones</u>, not a smartphone and a server supporting a website. *Licea v. Cinmar, LLC*, No. CV 22-6454-MWF (JEM), 2023 WL 2415592, at *11 (C.D. Cal. Mar. 7, 2023)

("*Cinmar*").

**Fifth**, Plaintiffs have no claim under the Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56 et seq. (Claim 9). They do not allege that Google obtained information regarding their "medical history, mental or physical condition, or treatment"—the only information protected under the CMIA—without authorization. *Eisenhower Med. Ctr. v. Sup. Ct.*, 226 Cal. App. 4th 430, 434 (2014).

**Sixth**, Plaintiffs have not alleged a hack in violation of the CDAFA (Claim 6). The CDAFA only prohibits a person from "knowingly access[ing]" a computer system or data "without permission." *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (citing Cal. Penal Code § 502(c)). Case law is clear that unauthorized access under the CDAFA requires bypassing a technical barrier or unauthorized use of login credentials akin to a "hack" into Plaintiffs' device or computer, which Plaintiffs do not allege. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 966 (N.D. Cal. 2014).

**Seventh**, their remaining common law claims are insufficiently plead. Negligent misrepresentation (Claim 4) requires pleading with particularity "facts which show how, when, where, to whom, and by what means the representations were tendered." *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 645 (1996); *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004). Plaintiffs come nowhere close to satisfying this heightened standard, providing no facts about the specific false statements they themselves (and not other members of the putative class) relied on when they used the Platform in 2017. 7 Cups has breached no agreement, express or implied (Claim 12); it fully complied with the Privacy Policy that Plaintiffs agreed to, and, in any case, Plaintiffs have not alleged that 7 Cups failed to safeguard their "intimate health data." Unjust enrichment (Claim 5) "is not a cause of action." *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018).

**Finally**, Plaintiffs' conceded reliance and consent to 7 Cups' Privacy Policy when they enrolled as members in 2017—which discloses the collection they now complain of—is properly considered under Rule 12(b)(6), and dispositive of Plaintiffs' claims. *See* RJN, Ex. 1 at pp. 1-4; *Smith v. Facebook, Inc.*, 745 F. App'x, 8 (9th Cir. 2018).

Plaintiffs' Complaint should be dismissed with prejudice.

1   **II.      FACTUAL BACKGROUND**

2          **A.      The 7 Cups Platform And Disclosures Regarding Collection Of Website Activity**

3          7 Cups provides a free emotional support platform consisting of a website, www.7cups.com (the

4   "Website"), and mobile application ("App") (together, the "Platform"). Compl. ¶ 11. The 7 Cups Platform

5   provides emotional support and chat-based counselling free of charge with the option to purchase premium

6   therapy services. *Id*. ¶¶ 46, 53. 7 Cups is a leader in the virtual mental health services space; peer-reviewed

7   publications have shown the 7 Cups model works as an effective treatment modality "for a broad spectrum

8   of mental health conditions including perinatal mood disorders, postpartum depression, anxiety, and

9   schizophrenia spectrum disorders." *Id*. ¶¶ 13-14.

10          Pursuant to its mission of providing its members with a safe space to share their emotional needs,

11  7 Cups does not require users to provide their name, address, full date of birth, or age when enrolling on

12  the Platform, and when chatting with a volunteer listener, members are discouraged from providing

13  information that could identify them. *Id*. ¶ 15. 7 Cups is transparent regarding the data that it collects and

14  uses from its members. When Plaintiffs enrolled on the Platform in 2017 and, as alleged, relied on the

15  representations communicated to them through 7 Cups' Privacy Policy, *id*. ¶¶ 119, 122, the Privacy Policy

16  provided:

17      Browser Information and Usage Information. **We log web browser information** (e.g.,
        **Internet Protocol addresses** and browser types) **and other usage information** from 7
18      Cups[ ] Platform such as **page view tallies**, **time spent on each page**, geographic location
        information, **page browsing information, [and] subject matter browsing information**[.]
19
        . . . .
20
        Browser Information and Cookies. **We use browser information, cookies and pixel tags**
21      **to determine whether a communication service or marketing material should be**
        **deployed on your browser** when you are visiting 7 Cups of Tea's Site or using 7 Cups of
22      Tea's Listening Platform. **We may also use browser information, cookies and pixel tags:**
        to determine how you arrived at 7 Cups of Tea's Site or 7 Cups of Tea's Listening Platform,
23      to determine whether you are a return visitor, to help us improve our product and service
        offerings, for quality assurance and training purposes, to help diagnose problems with our
24      servers, to gather broad demographic information, **to administer and optimize our**
        **services, to deliver marketing or other materials to you on behalf of third parties** and
25      for other lawful purposes.

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

RJN, Ex. 1 at 3-4.[2]

**B.      Plaintiffs' Claims**

Plaintiffs' claims arise from their use of the 7 Cups Platform in 2017 via their mobile devices and computer browsers. *Id.* ¶¶ 43-44, 51-52. Garland claims to have chatted with a listener on the Platform. *Id.* ¶¶ 44-45. Serrano allegedly purchased premium therapy services. *Id.* ¶¶ 51-52.

Plaintiffs insinuate that their chats on the Platform were shared with Google without their consent, but their actual factual allegations make clear that the only information plausibly transmitted to Google via Google Analytics was query strings and search parameters (*id.* ¶¶ 33, 37), pages viewed (*id.* ¶ 28), and mouse "clicks," which may include the name of a listener or therapist selected (*id.* ¶¶ 34, 36). *See also id.* ¶ 23 (alleging disclosure of "information regarding therapists with whom users are seeking therapy, when a patient connects with a therapist and the name of that therapist, a users' activity in the 7 Cups forums, and a users' page views on the Platform"). Importantly, by Plaintiffs' own allegations, even if their queries, pages viewed, or mouse clicks were collected, that information would not be associated with them personally, because they were not required to provide their name or address when joining 7 Cups' Platform. *Id.* ¶ 15.

**C.      Use Of Google Analytics On The Platform**

Google Analytics is one of the most popular website and mobile application analytics services on the Internet, providing website and platform developers like 7 Cups detailed analytics on how users interact with their services online.[3]  Google imposes strict limitations on developers that choose to use Google Analytics for contextual marketing and advertising purposes. Google's express terms that developers like 7 Cups must agree to as well as other disclosures about Google's analytics services foreclose Plaintiffs' theory that their most intimate conversations were "exploit[ed]" to target them with advertisements. *See,*

---

[2]      The Privacy Policy also defined "Cookies" as "pieces of information that some websites transfer to a visitor's web browser accessing the website and are used for record-keeping purposes at many websites. Use of cookies makes web-surfing easier by performing certain functions such as saving passwords, lists of potential purchases and personal preferences regarding the use of the particular website, and ensuring that the user does not see the same ad repeatedly." RJN, Ex. 1 at 5.

[3] *See* RJN, Ex. 5; *Usage statistics and market share of Google Analytics for websites*, W3 Techs Web Technology Surveys, https://w3techs.com/technologies/details/ta-googleanalytics#:~:text=Google%20Analytics%20is%20used%20by,is%2054.6%25%20of%20all%20websites. (last visited Nov. 13, 2023).

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

*e.g.*, RJN, Ex. 2 at 12 (instructing that an operator "will not and will not assist or permit any third party to pass information, hashed or otherwise, to Google that Google could use or recognize as personally identifiable information."). Google Analytics policies further mandate that no data be passed on to Google that could be recognized as personally identifiable information ("PII"), and no data collected "using Google Analytics may reveal any sensitive information about a user, or identify them." *Id*, Ex. 3 at 18. This policy is consistent with 7 Cups' own policies, which discourage users from providing information that could identify them personally on the Platform. Compl. ¶ 15. Finally, Google prohibits developers from personalized advertising based on sensitive information or prohibited categories, including personal health conditions, medication, and related health information, stating "[s]ensitive interest categories are restricted in personalized ads." RJN, Ex. 4 at 21.[4]

## III.   PLAINTIFFS FAIL TO STATE A CLAIM

### A.   Legal Standards

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts showing that his right to relief rises above "the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678–79 (2009). A court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

### B.   Plaintiffs' Claims Are Time-Barred

#### 1.   Plaintiffs' Claims All Arise From Online Activity Six Years Before Filing Suit

The statute of limitations for Plaintiffs' claims is between one to four years. Where, as here, it "is

---

[4] *Id*, Ex. 4 at 20-23 (defining sensitive interest categories to include "health conditions, treatments, procedures, personal failings, struggles, or traumatic personal experiences," and "personal health content," which includes (i) "physical or mental health conditions, including diseases, sexual health, and chronic health conditions"; (ii) "products, services, or procedures to treat or manage chronic health conditions, which includes over-the-counter medications and medical devices"; and (iii) "any health issues associated with intimate body parts or functions, which includes genital, bowel, or urinary health.").

apparent on the face of the complaint" that Plaintiffs' claims are untimely, the claims must be dismissed. *Hakimi v. Societe Air France, S.A.*, 2018 WL 4826487, *3 (N.D. Cal. Oct. 4, 2018) (dismissing all plaintiff's claims as they "appear time-barred on their face").

Plaintiffs' invasion of privacy and CIPA claims (Claims 1, 8, 10) are subject to one-year statutes of limitations. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) (dismissing CIPA claim with prejudice because "[u]nder the CIPA, the applicable statute of limitations is one year."); *Lauter v. Anoufrieva*, 2011 WL 13175659, at *7 (C.D. Cal. Nov. 28, 2011) ("A claim for invasion of the California constitutional right to privacy has a statute of limitations of one year."). Plaintiff's intrusion upon seclusion, negligent misrepresentation, Federal Wiretap Act, and breach of implied contract claims (Claims 1, 2, 4, 7, 12) are subject to two-year statutes of limitations. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 624 (N.D. Cal. 2021) (applying two-year limitations period to intrusion upon seclusion claim); *Casaretto v. Coldwell Banker Realty*, No. 10-CV-00509-LHK, 2011 WL 1576780, at *1 (N.D. Cal. Apr. 26, 2011) (dismissing Plaintiffs' negligent misrepresentation claim as time-barred because "statute of limitations for a negligent misrepresentation claim is two years."); 18 U.S.C. § 2520(e) (Wiretap Act has a limitations period of "two years"); Cal. Civ. Proc. Code § 339 (two year statute of limitations for implied-in-fact contract claims). Plaintiffs' fifth claim for unjust enrichment, to the extent such a claim exists, has a two or three-year statute of limitations. *See Huluwazu v. Snyder*, No. 17-CV-03386-LHK, 2017 WL 5991865, at *5 (N.D. Cal. Dec. 4, 2017) (dismissing unjust enrichment claim asserted "at least four years late" since claim subject to three-year statute of limitations if grounded in "fraud or mistake" but otherwise two-year statute of limitations under CCP Section 338(d) applies)[5].

Plaintiffs' CLRA, CMIA, and CDAFA claims (Claims 6, 9, 11) are subject to three-year statutes of limitations to the extent they seek actual damages. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) (holding Cal. Civ. Code § 1783 "set[s] a three-year statute of limitations for actions under the CLRA"); Cal. Civ. Proc. Code § 338(a) (three-year statute of limitations for claims of actual damages under CMIA as they are a "liability created by statute, other than a penalty or forfeiture"); Cal.

---

[5] The Complaint's vague, conclusory, and factually unsupported allegations of unjust enrichment make it impossible to determine the basis for the claim. Compl. ¶¶ 123-125. Either way, the claim is time-barred.

Penal Code § 502(e)(5) (providing statute of limitations for CDAFA claims is "three years of the date of the act complained of, or the date of the discovery of the damage, whatever is later." However, to the extent Plaintiffs seek punitive damages, not based on actual injury (Compl. ¶¶ 86, 95, 137, 144, 174, 175), those claims are subject to a one-year statute of limitations. *See* Cal. Civ. Proc. Code § 340(a) (providing "action upon a statute for a penalty" is subject to one-year statute of limitations); *Hypertouch, Inc. v. Azoogle.com, Inc.*, No. C-08-4970 MMC, 2009 WL 734674, at *1 (N.D. Cal. Mar. 19, 2009) (dismissing complaint because "statutes which provide for recovery of damages additional to actual losses incurred" are "penal in nature" and thus, are "subject to § 340(a)' s one-year statute of limitations."). And Plaintiffs' UCL claim (Claim 3) is subject to a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208 (providing "[a]ny action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued.").

Here, all of Plaintiff Garland's and Serrano's claims arise from their online activity on 7 Cups' Platform in 2017. Compl. ¶¶ 12, 43, 51. Indeed, Plaintiff Serrano makes clear she only used the 7 Cups Platform for "***a period of four to five months***" after downloading the App in 2017, and the Complaint does not allege either Plaintiff shared any information with the Platform after 2017—Serrano does not claim that she herself shared any information when she volunteered as a listener in 2020. *See id.* ¶¶ 52, 57. Plaintiffs did not file this action until August 30, 2023, six years after their claims relating to alleged interactions on 7 Cups' Platform accrued. Thus, Plaintiffs' claims are "time-barred on their face" and must be dismissed. *Hakimi*, 2018 WL 4826487, *3.

### C.   Plaintiffs' Claims Are Not Saved By Discovery Rule Or Equitable Tolling

The discovery rule tolls the limitations period until a "plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 (2005). Where, as here, Plaintiffs fail to allege any facts supporting why they could not have timely discovered their alleged injury, Plaintiffs "cannot rely on the discovery rule to save their claims from the statute of limitations." *Romo v. Wells Fargo Bank, N.A.*, No. 15-CV-03708-EMC, 2016 WL 324286, at *5 (N.D. Cal. Jan. 27, 2016) (holding discovery rule does not apply because plaintiffs failed to provide any "explanation as to why [their injury] should not have been discovered earlier"); *Fox*, 35 Cal. 4th at 808 (recognizing that in "assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show

diligence'; 'conclusory allegations will not withstand demurrer.'"). Indeed, "in order to employ the discovery rule to delay accrual of a cause of action," a potential plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.*

Here, Plaintiffs do not and cannot plead facts supporting the delayed discovery rule. Plaintiffs allege no facts indicating when they discovered their claims or why they could not have discovered their alleged claims **six years** earlier. Moreover, because 7 Cups' practices were clearly disclosed in its Privacy Policy, any insinuation that Plaintiffs were misled regarding data collection and sharing on the Platform is implausible. RJN, Ex. 1 at 3-4. Plaintiffs have "not met [their] burden of pleading the time and manner of discovery, or of pleading facts that show [their] diligence." *See Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) (rejecting application of discovery rule "because Plaintiff's Complaint contains insufficient allegations with respect to the time and manner of her discovery of the facts—Pfizer's alleged misrepresentations and omissions—giving rise to her claims, and provides no basis for the Court to conclude she was unable to discover such facts earlier despite reasonable diligence."). Plaintiffs fail to satisfy the first element for the discovery rule since they make no allegations regarding the manner of discovery or when they discovered any alleged misconduct. Plaintiffs fail to satisfy the second element because they do "not allege that [they] took any steps towards discovery." *Id.* at *9. The discovery rule does not apply here.

Nor can Plaintiffs rely on equitable tolling. *See Plumlee*, 2014 WL 695024, at *10 ("Because Plaintiff has failed to meet her burden to adequately plead facts supporting equitable tolling under the discovery rule, the Court finds that Plaintiff's claims under the CLRA, UCL, and FAL are time-barred."); *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786 (N.D. Cal. 2022) (holding consumer in putative class action was not entitled to equitable tolling of relevant statutes of limitations under CLRA and UCL because "she provides no facts supporting when and how she discovered the allegedly misleading nature of the 2016 statements."). Plaintiffs do not allege any fraud that would warrant equitable tolling. At best, Plaintiffs vaguely refer to "misrepresentations [] communicated to Plaintiffs and the Class through the 7 Cups Privacy Policy." (Compl. ¶ 119). However, 7 Cups' Privacy Policy during the relevant time period further undercuts Plaintiffs' claims. The 2017 Privacy Policy put Plaintiffs on notice—back in 2017—of the behavior

1   Plaintiffs now complain about in their 2023 Complaint. (Compl. ¶¶ 1, 23-25, 36). When Plaintiffs enrolled

2   in 2017, the 7 Cups' Privacy Policy expressly disclosed the "use [of] browser information, cookies and

3   pixel tags to determine whether a communication service or marketing material should be deployed on

4   your browser" and "to determine how you arrived at 7 Cups [ ] Platform[ ] . . . to deliver marketing or other

5   materials to you on behalf of third parties[.]" *See* RJN, Ex. 1 at 3-4; *see also id.* at 4-5 (7 Cups' 2017

6   Privacy Policy providing 7 Cups "may use and share such aggregated information for training and quality

7   assurance purposes, for purposes of delivering our services, for purposes of expanding and improving our

8   services and for other lawful purposes."). Thus, 7 Cups' 2017 Privacy Policy conspicuously disclosed the

9   alleged misconduct at the heart of Plaintiffs' Complaint.

10          **D.      7 Cups Did Not Invade Plaintiffs' Privacy Or Seclusion**

11          To state a claim for invasion of privacy (Claim 1), a plaintiff must allege (1) a legally protected

12   privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) a serious invasion

13   of the protected privacy interest. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 6 (1994). "The

14   California Constitution and the common law set a high bar for an invasion of privacy claim," *Low v.

15   LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), and "[a]ctionable invasions of privacy must

16   be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach

17   of the social norms underlying the privacy right," *Hill*, 7 Cal. 4th at 27, 37. Likewise, to state a claim for

18   intrusion upon seclusion (Claim 2), Plaintiffs must show that 7 Cups (1) "intru[ded] into a private place,

19   conversation or matter, (2) in a manner highly offensive to a reasonable person." *Taus v. Loftus*, 40 Cal.

20   4th 683, 725 (2007) (citing *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998)). "The tort is

21   proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place,

22   conversation or data source." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (citing

23   *Shulman*, 18 Cal. 4th at 232). Courts routinely assess both torts together and analyze the parallel elements

24   of "reasonable expectations of privacy" and "the offensiveness or seriousness of the intrusion." *Hernandez*,

25   47 Cal. 4th at 288.

26          Both claims fail here. First, Plaintiffs had no "objectively reasonable" expectation of privacy in

27   their search queries and page views (which they don't even allege they provided on the Platform) or their

28   device's IP address. *See* Compl. ¶¶ 1, 23-24, 31-38; *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d

968, 987 (N.D. Cal. 2014). As countless courts have held, "there is no legally protected privacy interest in IP addresses." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007) ("Internet users have no expectation of privacy in the . . . IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers."); *Ji v. Naver Corp.*, No. 21-cv-05143, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (same). Likewise, the search query parameters sent to Google whenever Serrano selected a therapist to chat with, searched for a therapist, or either Plaintiff clicked on a subpage of the Platform or a forum topic cannot give rise to an expectation of privacy either. *See also Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1108 (9th Cir. 2014) (no expectation of privacy in "[i]nformation about the address of the Facebook webpage the user was viewing").

Second, any collection and disclosure to Google was not highly offensive. 7 Cups' alleged sharing of Plaintiffs' anonymous and unidentified searches and page views is not "sufficiently serious and unwarranted as to constitute an egregious breach of the social norms." *Hernandez*, 47 Cal. 4th at 295 (citations omitted); *I.C.*, 600 F. Supp. 3d at 1049 ("the Court does not view the collection of" basic contact information "so private that their revelation would be highly offensive to a reasonable person."); *see Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal. 2008) (theft of a laptop containing unencrypted personal information provided in a job application, including social security numbers, was not an "egregious breach" of social norms). "Even disclosure of very personal information"—which did not occur here—"has not been deemed an egregious breach of social norms sufficient to establish a constitutional right to privacy." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014); *In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of unique device identifier number, personal data, and geolocation information did not constitute an egregious breach of privacy).

### E.   Plaintiffs Allege No Loss Or Damages

#### 1.   Plaintiffs Lack Statutory Standing Under The UCL And The CLRA

Plaintiffs' UCL and CLRA claims (Claims 3 and 11) fail for lack of statutory standing. To have statutory standing under the UCL, an individual must "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition," Cal. Bus & Prof. Code § 17204, meaning Plaintiffs must "demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (2011).

This requirement is stringent, requiring that a plaintiff's "'injury in fact' specifically involve 'lost money or property.'" *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1348 n.31 (2009). The CLRA similarly requires Plaintiffs to plead economic injury based on the "value" of their data. Cal. Civ. Code § 1780(a); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (2010); *see also Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 802 (2006) (applying the same economic injury standing analysis to plaintiff's UCL and CLRA claims); *Paduano v. Am. Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453 (2009) (analyzing UCL and CLRA claims together).

First, Plaintiffs' speculation that they were the targets of "exploit[ative]" advertising based on their chat conversations is wholly implausible; those chats were never disclosed. Compl. ¶¶ 1, 23-24, 31-38, 49, 56. *See also* RJN, Ex. 2 at 5; Ex. 3 at 18; Ex. 4 at 20-23. Second, Plaintiffs make no effort to quantify their allegation that their IP address and search and page-click string queries—the actual data allegedly transmitted to Google—had "value" that somehow could've been diminished (*id.* ¶ 1); nor do they "plausibly allege that they intended to sell their . . . personal information . . . or . . . that someone else would have bought it"—rather, they indicate that they did not intend for their information to be used commercially (despite the disclosure in 7 Cups Privacy Policy that it may use data for marketing purposes). *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784, 804 (N.D. Cal. 2019). Plaintiffs have no plausible theory of harm regarding the sale or control of their innocuous search query data. Their one-allegation suggestion of a diminution in value is "purely hypothetical" and cannot supply statutory standing under the UCL or CLRA. *In re Facebook, Inc. Consumer Priv. Litig.*, 402 F. Supp. 3d at 804; *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (loss of "property value in one's information, do[es] not suffice as injury under the UCL"); *In re iPhone Application Litig.*, 2011 WL 4403963, at *5, 10 (N.D. Cal. Sept. 20, 2011) (no standing because plaintiffs had not alleged "any damage" by claiming defendant had allowed third parties to collect their "personal information," without any additional harm from that collection).

### 2.      Plaintiffs Allege No Loss Under The CDAFA

Plaintiffs also fail to plead any cognizable "damage or loss" resulting from the alleged violation of the CDAFA (Claim 6). *Perkins v. LinkedIn Corp.,* 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014). The CDAFA provides a cause of action to only "the owner or lessee of the computer, computer system,

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

computer network, computer program, or data *who suffers damage or loss* by reason of a violation." Cal. Penal Code § 502(e)(1) (emphasis added). Courts have required plaintiffs to plead that they "have suffered [ ] tangible harm" from the alleged Section 502 violations. *Perkins*, 53 F. Supp. 3d at 1219; *see also Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1071 (N.D. Cal. 2018) (dismissing CDAFA claim where "defendants have not plausibly alleged that accessing the types of information secured by Synopsys—IP addresses, MAC addresses, user names, host names, user accounts, email addresses, [ ]—caused economic damage to defendants").

As explained, *supra* IV(D) & (E)(2), Plaintiffs allege no plausible harm *whatsoever*. Case law explicitly requires Plaintiffs allege a "tangible harm" resulting from the CDAFA violation. *See Perkins*, 53 F. Supp. 3d at 1219. Courts have expressly rejected Plaintiffs' theory that a violation of an intangible alleged privacy right (which is implausible here) can support a claim under the CDAFA: Plaintiffs "offer no support for [their] theories that the loss of the right to control [their] own data, the loss of the value of [their] data, and the loss of the right to protection of the data . . . is 'damage or loss' within the meaning of the CDAFA." *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (citing *Nowak v. Xapo, Inc.*, No. 5:20-cv-03643-BLF, 2020 WL 6822888, at *4-5 (N.D. Cal. Nov. 20, 2020) (dismissing CDAFA claim based on loss of value of stolen cryptocurrency in part because the nature of the loss was not cognizable under CDAFA)). Plaintiffs have no claim under the CDAFA.

### 3. Plaintiffs Allege No Damages To Support Contract And Misrepresentation Claims

"Damages is an element of [ ] negligent misrepresentation" (Claim 4). *Lewis v. Wachovia Mortg.*, No. 11-CV-122-H (RBB), 2011 WL 13356106, at *4 (S.D. Cal. June 6, 2011). Further, a breach of contract claim (Claim 12) must include the essential element of damages. *See, e.g.*, *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("a breach of contract claim requires a showing of appreciable and actual damage."). Even if assuming the truth of their claims that they were induced into using the Platform based on misrepresentation and breach of a vague promise of anonymity (they weren't), the Platform is free, Plaintiffs can't show diminution in the value of the data allegedly transmitted to Google, nor have they suffered any a cognizable harm from so-called targeted advertising. *Supra* IV(D), (E)(2)-(3).

---

14

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

### F.      Plaintiffs' Adequate Remedy At Law Forecloses Their UCL And CLRA Claims

The UCL and CLRA claims (Claims 3 and 11) should also be dismissed because Plaintiffs claim a right to statutory and actual damages (under the CIPA, CDAFA, CMIA and for an alleged invasion of privacy, breach of contract and misrepresentation), providing them an adequate remedy at law that precludes them from obtaining equitable relief under the UCL and CLRA. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844-45 (9th Cir. 2020) (plaintiffs must establish that they lack "an adequate remedy at law before securing equitable restitution for past harm under the UCL"). Under the UCL and CLRA, "[p]revailing plaintiffs are [] limited to injunctive relief and restitution." *Korea Supply Co. v. LockheedMartin Corp.*, 29 Cal. 4th 1134, 1144 (2003); *see Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992) ("Damages are not available" under the UCL); *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014) ("[T]he remedy for a UCL violation is either injunctive relief or restitution."). Plaintiffs only seek equitable relief under the CLRA. Compl. ¶ 196.

The Ninth Circuit Court of Appeals recently affirmed that "a federal court's equitable authority remains cabined to the traditional powers exercised by English courts of equity, even for claims arising under state law," which requires that "'[e]quitable relief in a federal court is of course subject to restrictions: . . . a plain, adequate and complete remedy at law must be wanting . . . .'" *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020) (emphasis in original) (quoting *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105-06 (1945)). Here, Plaintiffs have wholly failed to allege that the remedies available to them at law in the form of actual and/or statutory damages would be inadequate to remedy whatever harms— assuming they have any, which 7 Cups disputes—they have suffered. This deficiency is fatal to Plaintiffs' claims under the UCL and CLRA, because the Ninth Circuit requires Plaintiffs to allege that a "*plain, adequate and complete remedy at law must be wanting.*" *Sonner*, 971 F.3d at 840; *see Gardiner v. Walmart, Inc.*, 20-CV-04618-JSW, 2021 WL 4992539, at *7 (N.D. Cal. July 28, 2021) (dismissing claims for equitable relief arising from an alleged data breach because "an injunction requiring Defendant to improve its security procedures in the future would not provide relief for injuries arising out of a past data breach. As to potential future breaches, Plaintiff offers no explanation why monetary damages would not provide adequate relief for purported future harms"); *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308 (9th Cir. 2022) (applying *Sonner* to CLRA claim). "The issue is not whether a pleading may seek distinct forms of

relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy. On that point, Sonner holds that it does not." *Shay v. Apple Inc.*, 20CV1629-GPC(BLM), 2021 WL 1733385, at *3 (S.D. Cal. May 3, 2021).

### G.   Plaintiffs Fail To State A Claim Under The Wiretap Act Or CIPA

#### 1.   7 Cups' Consent To The Recording Bars Plaintiffs' Wiretap Act Claim

The Wiretap Act (Claim 7) only requires one party to the communication to consent to an interception to relieve the provider of liability." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014); *Rodriguez*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("the consent of one party is a complete defense to a Wiretap Act claim."). 7 Cups' consent to the recording and sharing of any communications via Google Analytics bars liability here.

#### 2.   Plaintiffs Fail To Plead Claims Under The Wiretap Act And CIPA Section 631

The Wiretap Act and CIPA Section 631 fail on multiple grounds. <u>*First*</u>, both statutes only prohibit the unauthorized "interception" of a communication.[6] *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQM-MDD, 2020 WL 1984062 at *7 (S.D. Cal. April 7, 2020); Cal. Penal Code § 631(a) (protecting communication while "in transit"). For a communication 'to be intercepted in violation of the Wiretap Act, it must be acquired during transmission, not while in electronic storage." *Konop*, 302 F.3d at 878.

An "interception" occurs when a communication is acquired "in transit," but Plaintiffs alleges no non-conclusory facts that suggest an acquisition contemporaneous with transmission. *Id*; *see* Compl. ¶ 152 ("Defendant intentionally embedded and installed the Google Analytics tracking codes and technology on its Platform, and [ ] facilitated the interception and simultaneous transmission to Google . . . while the information was 'in transit' and in real time"). Plaintiffs' recitation of the conclusory allegation "in transit" is not enough. *Rosenow*, 2020 WL 1984062, at *7 (allegation that defendant used an "algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit and before placing them in electronic storage" failed to state a claim); *Quigley v. Yelp*, No. 17-CV-03771-IRS, 2018 WL 7204066 at *4 (N.D. Cal. Jan 22, 2018) (dismissing Wiretap Act claims where plaintiff did not "allege with particularity how or

---

[6]   "[I]ntercept" under the Wiretap Act, 18 U.S.C. § 2510(4) and "in transit" under CIPA are interpreted coextensively. *Underhill v. Kornblum*, No. 16-CV-1598-AJB-WVG, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017).

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

when defendant became aware of her communications"). In fact, that allegation confirms Google received any alleged communications <u>after</u> they were received on the 7 Cups' Platform, which is not an interception. *See also* Compl. ¶¶ 29-30 (7 Cups shared communications to Google once already received by 7 Cups); *Rosenow*, 2020 WL 1984062, at *7.

<u>*Second*</u>, Plaintiffs have not alleged that any "contents" were shared without their permission. The Wiretap Act and CIPA § 631 only prohibit the unlawful interception of the "contents" of a communication. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). "[C]ontents" are "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8); *Brodsky*, 445 F. Supp. 3d at 127; *Graham*, 533 F. Supp. 3d at 833 ("The 'contents' of a communication under CIPA and the Federal Wiretap Act are the same.").

"Mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff[s], and pages and content viewed by Plaintiff[s] [are] precisely the type of . . . information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs." *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *4 (Fla. Cir. Ct. June 17, 2021) (collecting authorities); *see In re Zynga*, 750 F.3d at 1107 ("location of a webpage a user is viewing on the internet" not "contents"); *see also, e.g.*, *Graham*, 533 F. Supp. 3d at 833 (names, addresses, customer identities, are not "contents"). Here, Plaintiffs proffer the legal conclusion that Google Analytics received their "intimate data" (e.g., Comp. ¶¶ 19, 23, 166), but they only data they claim Google Analytics is capable of acquiring— page clicks and searches when selecting a listener or therapist (*id*. ¶¶ 1, 23-24, 31-38) is not actionable.

<u>*Third*</u>, CIPA § 631(a) does not prohibit a party to a communication from recording it, and there can be no aiding-and-abetting liability where an online platform like 7 Cups uses analytics software like Google Analytics as a tool to improve the functionality of the platform. "Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by *third parties*." *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). "*Only* a *third party* can listen to a conversation secretly . . . . By contrast, a party to a communication can record it (and is not eavesdropping when it does)." *Graham*, 533 F. Supp. 3d at 831 (emphasis added); *see also, e.g.*, *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (Section 631 "has been held to apply only to eavesdropping by a third party and *not to recording by a participant to a conversation*."). Plaintiffs allege no plausible facts that Google Analytics was anything other than a tool

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

used by 7 Cups for 7 Cups' *own* purposes. Plaintiffs allege that data sent to Google Analytics was used so 7 Cups can "track site visitors' actions" for advertising purposes. Compl. ¶ 25; RJN, Ex. 5 ("Google Analytics gives you the tools, free of charge, to understand the customer journey"). Courts have held that this kind of allegation establishes that a software provider is more akin to a tape recorder than an eavesdropper, and cannot support a claim under § 631. *Licea v. Cinmar, LLC*, No. CV 22-6454-MWF (JEM), 2023 WL 2415592, at *8 (C.D. Cal. Mar. 7, 2023) (allegations that provider eavesdropped on communications to "harvest data from those conversations for financial gain" did not establish eavesdropping); *Williams v. DDR Media, LLC*, No. 22-CV-03789-SI, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023) ("Jornaya has merely recorded the communication for retrieval by a party to the same communication. Thus, [ ] Jornaya is more akin to a tape recorder vendor than an eavesdropper.").

### 3.    Internet Communications Are Not "Confidential" Under CIPA Section 632

Plaintiffs cannot allege that Google "recorded" or received anything "confidential" under CIPA § 632 (Claim 8). "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632." *Campbell*, 77 F. Supp. 3d at 849 (collecting cases); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052–53 (N.D. Cal. 2018) (plaintiffs "fail to offer any support for their theory that internet-based communications can be considered 'confidential' under CIPA"; dismissing § 632 claim); *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *22-23 (N.D. Cal. Sept. 26, 2013) (emails are not "confidential" under CIPA § 632). Further, the specific facts Plaintiffs allege belie any inference that their chats on the Platform were shared with Google. *Supra* IV(D) & (E)(2)-(3). Plaintiffs cannot, therefore, state a claim for interception of a confidential communication based on the collection of their non-actionable page views, mouse clicks, and search terms alone.

### 4.    CIPA Section 632.7 Only Applies To Communications Between Telephones

As courts have uniformly held: "The unambiguous meaning of [Section 632.7]" (Claim 8) is "that it only applies to communications involving two telephones. Plaintiff[s'] allegations all relate to text-based web communications[,]" which "virtually by definition cannot involve two telephones." *Byars v. Hot Topic, Inc.*, No. ED-CV-22-1652-JGB-KKX, 2023 WL 2026994, at *10 (C.D. Cal. Feb. 14, 2023). "Defendant's website is simply not a 'landline telephone'" under Section 632.7. *Licea v. Vitacost.com, Inc.*, No. 22-CV-1854-RSH-WVG, 2023 WL 5086893, at *4 (S.D. Cal. July 24, 2023) (citing *Valenzuela v.*

*Keurig Green Mountain, Inc.*, No. 22-CV-09042-JSC, 2023 WL 3707181, at *6 (N.D. Cal. May 24, 2023) (rejecting Plaintiff's argument that Section 632.7 applies to messages sent via chat feature; "Plaintiff again invites the Court to engage in statutory re-writing to update § 632.7 for the internet era by interpreting 'landline' broadly. But that is not this Court's role. The statute has clear terms.").

Even if Plaintiffs' iPhone and Android devices (Compl. ¶¶ 43, 51), when used to access the Internet, are telephones within the meaning of § 632.7, the server with which Plaintiffs communicated that supported the Platform is *not* a telephone under any stretch of that definition. *Martin v. Sephora USA, Inc.*, No. 122CV01355JLTSAB, 2023 WL 2717636, at *14 (E.D. Cal. Mar. 30, 2023) (holding that plaintiff failed to state a claim under Section 632.7 based on use of her smartphone to communicate with defendant's website; "she has not alleged that Defendant also used a cellular radio, cordless, or landline telephone on the other side of the communication. To the contrary, Plaintiff concedes in her opposition briefing that Defendant received the communication through computer equipment."), *report and recommendation adopted*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023)). Because Plaintiffs have not alleged a communication between <u>two</u> telephones, § 632.7 does not apply and their claim should be dismissed.

### H.    Plaintiffs Have No Claim Under The CMIA

Plaintiffs fail to allege a plausible claim under the CMIA (Claim 9) because they do not allege that 7 Cups impermissibly disclosed information regarding their medical history, condition, or treatment. The CMIA "provides that an individual may recover $1,000 nominal damages against any person or entity who has negligently released his confidential medical information." *Eisenhower Med. Ctr.*, 226 Cal. App. 4th at 434. "Under the CMIA a prohibited release . . . must include more than individually identifiable information but must also include information relating to medical history, mental or physical condition, or treatment of the individual." *Id*. at 437. The <u>only</u> information that Plaintiffs plausibly allege was collected from them was the time when Serrano chatted with a therapist or Garland chatted with a non-licensed, non-professional listener, and the name of a selected therapist or listener. (Compl. ¶¶ 1, 23-24, 31-38)—is not actionable under the CMIA. *See Wilson v. Rater8, LLC*, 20-CV-1515-DMS-LL, 2021 WL 4865930, at *4–5 (S.D. Cal. Oct. 18, 2021) (plaintiff's "name, cellular telephone number, 'treating physician names, medical treatment appointment information, and medical treatment discharge dates and times'" not

"medical information" within the meaning of the CMIA); *Erhart v. Bofl Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017) (allegation that defendant received information that plaintiff "was seeking an appointment with his physician to discuss a medical leave of absence" not "medical information" under the CMIA). "It is clear from the plain meaning of the [CMIA] that medical information cannot mean just any patient-related information held by a health care provider, but must . . . include a patient's medical history, mental or physical condition, or treatment." *Eisenhower Med. Ctr.*, 226 Cal. App. 4th at 435. Plaintiffs do not allege that they provided any other information that plausibly contained or constituted medical information under the CMIA. Because Plaintiffs do not plausibly allege a misuse or unauthorized access to their "medical history, mental or physical condition, or treatment" information, their CMIA claim fails to state a claim for relief. *Id.*

## I.     Plaintiffs Have Not Alleged An Unauthorized Access Under The CDAFA

The CDAFA (Claim 6) prohibits only the unauthorized access to "lawfully created computer data and computer systems." Cal. Penal Code § 502(c). In other words, Section 502(c) permits civil liability only if a computer system is accessed "without permission" (i.e., broken into) by an outsider. *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34 (2007) ("Section 502 defines 'access' in terms redolent of 'hacking' or breaking into a computer"). "[U]sing a computer network for the purpose that it was designed to serve, even if in a manner that is otherwise improper, is not the kind of behavior that the legislature sought to prohibit" and does not constitute acting "without permission." *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *7 (N.D. Cal. July 20, 2010). In defining an access "without permission" under the CDAFA, "most courts have followed [*Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *7 (N.D. Cal. July 20, 2010)]" and find that the statute only applies to the circumvention of a "technical or code-based barrier" that restricts or bars access. *NovelPoster*, 140 F. Supp. 3d at 966 (citing *People v. Childs,* 220 Cal. App. 4th 1079 (2013)] as holding that the CDAFA requires the same circumvention of a technical or code based-barrier as the CFAA). Moreover, "access" requires more than mere "use": it mandates that an individual or entity "gain entry to . . . the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." Cal. Penal Code § 502(b)(1). As the Court of Appeal has observed, "Section 502 defines 'access' in terms redolent of 'hacking' or breaking into a computer." *Chrisman*, 155 Cal. App. 4th at 34.

Here, Plaintiffs concede no actionable "access" by Google Analytics' software onto their devices; as alleged, their data was voluntarily transmitted to 7 Cups, and subsequently to Google, and it was only collected <u>after</u> it was already received by 7 Cups, not while on Plaintiffs' devices. Compl. ¶¶ 29-30. Indeed, they allege that Google Analytics is an "tracking" code only embedded on 7 Cups' <u>Platform</u>, not Plaintiffs' devices. *Id*. ¶ 152. This is not an unauthorized access under the CDAFA.

### J.    Plaintiffs Fail To State A Claim for Negligent Misrepresentation

Plaintiffs have failed to plead negligent misrepresentation (Claim 4) with particularity, as they must do. *Lazar*, 12 Cal. 4th at 645 (must plead with particularity "facts which show how, when, where, to whom, and by what means the representations were tendered."); *see also Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 216 (1983) (applying heightened particularity requirements to negligent misrepresentation claim); *Foster v. Sexton*, 61 Cal. App. 5th 998, 1028 (2021) ("For policy reasons, some causes of action, such as fraud and negligent misrepresentation, must be pleaded with particularity . . . ."). Indeed, Plaintiffs do not cite a single alleged misrepresentation communicated to them when they enrolled as members in 2017. Their attempt to wedge in putative class members' reliance on the <u>current</u> Privacy Policy terms is irrelevant to Plaintiffs' own allegations and claims, where they only allege that they were active as members in 2017, and not that they provided anything to 7 Cups in reliance on the current Privacy Policy (since Plaintiffs have not even used the Platform for many years). Compl. ¶¶ 43, 51-52; *Scott v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 743, 766 (2013) (demurrer sustained where plaintiff "pleaded in generalities, without identifying the precise statements made, or the dates on which they were made").

### K.    Plaintiffs Have No Implied Contract Claim

Plaintiffs attempt to shoehorn 7 Cups' current Privacy Policy terms as an "express" claim of an "implied" contract, but do not allege that they ever agreed to or acknowledged the current Privacy Policy (because they have not used the Platform for years). Compl. ¶ 201. The Privacy Policy they concededly relied upon when first enrolling (*id*. ¶¶ 119, 122) does not contain the language they quote in support of their implied contract claim, but rather expressly disclosed the use of cookies like Google Analytics and the collection of the interactions allegedly transmitted here. *Compare id*. ¶¶ 1, 23-24, 36 *with* RJN, Ex. 1 at 3-4 ("We log web browser information (e.g., [IP] addresses [ ]) and other usage information . . . such as

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

page view tallies, time spent on each page, geographic location information, page browsing information, [and] subject matter browsing information") ("We use browser information, cookies and pixel tags to determine whether a communication service or marketing material should be deployed on your browser" and "to determine how you arrived at 7 Cups [ ] Platform[ ] . . . to deliver marketing or other materials to you on behalf of third parties[.]"). Their Complaint is unintelligible, failing to allege the most basic "substance of [the contract's] relevant terms." *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 994 (2013).

### L.    Unjust Enrichment Is Not A Cause Of Action

Unjust enrichment (Claim 5) "is not a cause of action." *De Havilland*, 21 Cal. App. 5th at 870.

### M.    Plaintiffs' Consent Bars Their Claims

Plaintiffs' undisputed and alleged notice of 7 Cups' 2017 Privacy Policy is dispositive of their claims. Compl. ¶¶ 119, 122. *See Smith*, 745 F. App'x at 8.

Plaintiffs allege that when they enrolled on the Platform in 2017, they relied on 7 Cups' Privacy Policy, which explicitly informed Plaintiffs that:

> "We log web browser information (e.g., [IP addresses [ ]) and other usage information from 7 Cups[ ] Platform such as page view tallies, time spent on each page, [ ] page browsing information, [and] subject matter browsing information";

> "We use browser information, cookies and pixel tags to determine whether a communication service or marketing material should be deployed on your browser"; and

> "We may also use browser information, cookies and pixel tags: . . . to administer and optimize our services, to deliver marketing or other materials to you on behalf of third parties[.]"

RJN, Ex. 1 at pp. 1-2.[7] Given these relied-upon express disclosures, "the Court is hard-pressed to find that Plaintiff[s] [were] not aware that [their] interactions with the [Platform] were being monitored." *Jacome*, 2021 WL 3087860, at *7; *Smith*, 745 F. App'x at 8; *In re Google Inc.*, 2013 WL 5423918, at *12-13 (finding implied consent where party had "adequate notice of the interception").

---

[7]     "Cookies" are defined as "pieces of information that some websites transfer to a visitor's web browser accessing the website and are used for record-keeping purposes at many websites. Use of cookies makes web-surfing easier by performing certain functions such as saving passwords, lists of potential purchases and personal preferences regarding the use of the particular website, and ensuring that the user does not see the same ad repeatedly." RJN, Ex. 1 at 5.

**IV.      CONCLUSION**

7 Cups respectfully requests that the Court dismiss the Complaint and deny Plaintiffs leave to amend.

DATED: November 13, 2023          Respectfully submitted,

**GREENBERG TRAURIG, LLP**

_/s/ Rebekah S. Guyon_
Rebekah S. Guyon (SBN 291037)
_GuyonR@gtlaw.com_
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700

_Attorneys for Defendant 7 Cups of Tea, Co._