**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
KAS L. GALLUCCI (288709)
*kas@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA  92103
Tel: (619) 696-9006
Fax: (619) 564-6665

**UNITED STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF CALIFORNIA**

CAYLYN GARLAND and CIERRA SERRANO individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

7 CUPS OF TEA, CO. a Delaware corporation;

*Defendant*.

Case No: 3:23-cv-04492-PCP

**CLASS ACTION**

**FIRST AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Caylyn Garland and Plaintiff Ciera Serrano, on behalf of themselves and all others similarly situated, assert the following against Defendant 7 Cups of Tea, Co. ("7 Cups") upon personal knowledge, where applicable, information and belief, and the investigation of counsel, which included, among other things, consultation with experts in the field of data privacy.

## **INTRODUCTION**

1.    This is a class action brought by Plaintiffs after knowledge that their personal identifying information, including protected health information, has been tracked, collected, and shared by Defendant to third party services, including Google, LLC ("Google"), for targeted advertising and other commercial exploitation in direct violation of Federal and California state laws.  This private and personal information was provided to Google despite Defendant assuring users that it would keep their health data private. The collection and sharing of Plaintiffs' private health data presents an egregious invasion of Plaintiffs' privacy. Furthermore, the transfer of data by Defendant to third parties harmed Plaintiffs by among other things, diminishing the value of Plaintiffs' personal health information and the privacy violation caused when the extracted data is used to target and profile Plaintiffs with unwanted and/or harmful content.

2.    The gravity of these data privacy violations cannot be overstated. In fact, a growing and insidious practice is to collect unique data from users to build a profile which is used to allow third parties and data brokers to follow users' activities across devices with essentially no limit. This practice is unique and more damaging than tracking consumers' browsing activity with cookies.

3.    Defendant has the affirmative duty to safeguard consumers' device information and private and protected health information and, at the very minimum, to disclose the access, collection, and dissemination of consumers' data. Defendant failed to fulfill such duties and in fact misrepresented that the data would be safeguarded.

4.    Plaintiffs seek an injunction to stop Defendant's unlawful practices and

1    sequester its unlawfully obtained information, an award of reasonable damages for the

2    violations, and attorneys' fees and costs.

3    **JURISDICTION AND VENUE**

4    5.    This court has subject matter jurisdiction over this action pursuant to 28

5    U.S.C. § 1332(d), because at least one member of the Class, as defined below is a citizen

6    of a different state than Defendant, there are more than 100 members of the Class, and

7    the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

8    6.    The court has personal jurisdiction over Defendant because Defendant has

9    a principal place of business in Palo Alto, California.

10   7.    Venue is proper in the District pursuant to 28 U.S.C. § 1391(b)(2) because

11   the injury in this case substantially occurred in this District.

12   **PARTIES**

13   8.    Plaintiff Caylyn Garland is a resident of Jamestown, California.

14   9.    Plaintiff Cierra Serrano is a resident of Glendale, California.

15   10.   Defendant 7 Cups of Tea, Co. is a Delaware corporation with its registered

16   address and principal place of business at 828 Bryant Street, Suite B, Palo Alto,

17   California 94301.

18   **FACTUAL ALLEGATIONS**

19   11.   The Defendant 7 Cups of Tea Co. owns and developed the 7 Cups: Online

20   Therapy and Chat App ("7 Cups" or "7 Cups Platform" or "Platform") a popular virtual

21   Platform in the mental health space.

22   12.   The 7 Cups Platform touts 24/7 real-time access to free, anonymous,

23   emotional support and counseling from trained, active listeners, all in an easy-to-use chat

24   app and browser-based website. In addition to the emotional support provided by trained

25   active listeners, the 7 Cups Platform offers the option of purchasing chat-based therapy

26   sessions with licensed therapists, access to chat rooms and community forums,

27   mindfulness activities and free wellness tests.

28

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

13.    7 Cups claims to reach more than a million people each month, with active listeners volunteering in 191 counties and providing support in 152 languages, billing itself as "the largest mental health system in the world". The Google Play store shows that the App has more than one million downloads, with an average of 1.4 million visits to its desktop-based website each month.

14.    7 Cups positions itself as a leader in the mental health space, advertising research-backed, evidence-based, emotional support. The website lists peer-reviewed publications supporting the efficacy of its Platform as a treatment modality for a broad spectrum of mental health conditions including perinatal mood disorders, postpartum depression, anxiety, and schizophrenia spectrum disorders. 7 Cups further legitimizes its mental healthcare by advertising its 2016 receipt of the Stanford MedicineX award for excellence in health care systems design.

15.    A defining feature of the 7 Cups Platform is anonymity. Users are promised anonymity when chatting with an active listener. When creating an account, users are asked for an email address, birth month and year, and provided with a generated screenname. They are not prompted to provide their name, address, gender, or age, furthering the notion that the Platform is anonymous. When chatting with a listener, they are discouraged from providing any identifying information, contact information, or social media handles, furthering the assumption that their interaction and the intimate information shared is anonymous as promised.

16.    The information shared on 7 Cups is intimate and private by nature. When requesting to speak with a listener, users are required to select at least one topic from a list. These topics include, but are not limited to: Depression, Anxiety, Bipolar, Chronic Pain, Forgiveness, Loneliness, Spirituality, Grief, Cancer, Bullying, Financial Stress, Eating Disorders, ADHD, OCD, Work Stress, and more.

17.    In the "Forums" section of the Platform, users can seek and offer support on a wide variety of highly sensitive mental health issues. Under the guise of anonymous

- 4 -

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

screennames and computer-generated avatars, users initiate conversations on a wide variety of vulnerable topics, such as: "I was just diagnosed with PTSD" and "Experiencing near constant hallucinations for a year despite taking the antipsychotic Abilify."

18.   Plaintiffs and Class members provided this information to 7 Cups based on the company's repeated assurances that their private health data would remain protected and confidential and would not be disclosed to third parties.

19.   This is because the improper collection and surreptitious sharing of this intimate data has significant real-world consequences. Indeed, in today's world, data is an extremely valuable commodity. The companies that deal in this data—such as Google and Meta—are some of the largest and most valuable companies in the world. When these companies gain access to the private data users shared here, they are able to capitalize on an especially sensitive class of information, targeting users with ads in ways that are acutely invasive.

20.   7 Cups claims repeatedly throughout its website that the information shared through chats is anonymous. On a page about the benefits of its chat feature, 7 Cups states, "One of the great benefits of talking with a 7 Cups of Tea listener is that the conversation is an anonymous chat. You can chat with one of our listeners in confidence knowing that what is discussed will not be shared with anyone else." https://www.7cups.com/anonymous-chat/#:~:text=One%20of%20the%20great%20benefits,through%20non%2Djudgmental%20active%20listening (last visited August 29, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

21.   The 7 Cups' current Privacy Policy lays out specific instances in which user data is shared, as described in the image below:



### 6. Personal Information We Share

We may share and disclose Personal Information as follows:

- **Third Party Service Providers Performing Services on Our Behalf.** We share Personal Information, with certain third-party service providers that assist us in providing the Services and which are bound by duties of confidentiality. For example, we may use third parties to host the Services, to send out email updates about the Services, administrative services, financial services, quality assurance, data aggregation or remove repetitive information from our user lists.

- **Therapists.** If you elect to consult with a licensed therapist through 7 Cups, we may share your information with your therapist to enable and facilitate care.

- **Healthcare Providers.** If you have been referred to the Services as part of a care plan by your healthcare provider, we may share your Personal Information with your healthcare provider to facilitate care.

- **For Legal Purposes.** We will disclose your Personal Information as we deem necessary to respond to a subpoena, regulation, binding order of a data protection agency, legal process, governmental request or other legal or regulatory process. We may also share your Personal Information as required to pursue available remedies or limit damages we may sustain.

- **Welfare Assurance.** We may disclose your Personal Information directly to law enforcement or local authorities in the event that it has been reasonably determined that your safety or the safety of others may be at risk.

- **Business Transfer.** In the event of a merger, reorganization, consolidation, restructuring, bankruptcy, sale of substantially all interests or assets, or other similar transaction, we may transfer you Personal Information to the subsequent owner or operator of the Services.

- **Anonymized Data.** We may de-identify your Personal Information, in compliance with applicable law and aggregate such de-identified data with the de-identified data of other users. Such anonymized, aggregated data is no longer considered Personal Information. We may then share such anonymized aggregated data with the sponsors of programs that facilitate your access to the Services, such as government health agencies, researchers or healthcare providers. At 7 Cups, we believe that global mental health is a collaborative effort. The sharing of anonymized data plays a key role in helping both 7 Cups users and people worldwide to understand and better their mental health while maintaining a high level of privacy and anonymity to individuals.

22.   A section of the 7 Cups current Privacy Policy is dedicated to California users. It explicitly states, "**It is our policy that we do not share your Personal Information with other businesses for marketing uses.**"

### 15. Your California Privacy Rights

Residents of the State of California who provide certain types of Personal Information in obtaining products or services for personal, family or household use are entitled to request and obtain from us once a calendar year information about certain types of Personal Information we shared, if any, with other businesses for their own direct marketing uses. It is our policy that we do not share your Personal Information with other businesses for marketing uses. Nevertheless, to make such a request, please send an email message to privacy@7cups.com with "Request for California Privacy Information" on the subject line and in the body of your message.

23.   Contrary to these assurances, the 7 Cups' Platform surreptitiously shares users' private medical information without their knowledge or consent. This information includes but is not limited to: (1) patients' mental health concerns; (2) information regarding therapists with whom patient's/users are seeking therapy; (3) when a patient connects with a therapist and the name of that therapist; (4) a users' activity in the 7 Cups forums; and (5) a users' page views on the Platform.

24.   7 Cups discloses patients' private personal and medical information, along

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

with their IP address, to Google.  An IP address is a number that identifies a specific device connected to the Internet and its geolocation. Under HIPAA, an IP address is considered personally identifiable data 45 C.F.R. § 164.514(b)(2)(i)(0). Under the California Consumer Privacy Act ("CCPA"), personal information includes "information that identifies, related to, described, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household" and includes names, addresses, IP addresses, email addresses, and unique personal identifiers. *See* Cal. Civ. Code § 1798.140(o).

25.   7 Cups disclosed its users' highly sensitive health information to Google properties such as Google Analytics, a web analytics service that allows website owners to track site visitors' actions in order to target such visitors with personalized advertisements. Google Analytics collects the IP addresses of individual Internet users in order to facilitate and track Internet communications. Simply put, Google can use the information that 7 Cups is disclosing in order to identify a specific patient's actions on 7 Cups' website.

26.   Google also uses the collected highly sensitive health information for numerous marketing purposes, including but not limited to building short- or long-term health-related user profiles by assigning patients and their communications to specific targeting categories called "verticals"; following patients around the Internet to stalk them with future ads through a process called "remarketing" and using the collected health information to improperly improve its search algorithms, ad-targeting capabilities, and machine learning models; and, through Google Tag Manager, contemporaneously sharing Health Information with other tracking companies.

27.   Google's unlawful tracking, collection and monetization (i.e., its internal use and profiting) of the collected highly sensitive health information occurs through the Google Source Code which is secretly embedded in Defendant's Platform, which effectively tags and tracks the users browsing.

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

28.    By way of example, when a user visits Defendant's Platform and conducts searches regarding their mental health concerns, therapists with whom the patient's/users are seeking therapy and makes selections in 7 Cups forums, the user understands and believes they are only connecting with 7 Cups, but, where the Google Source Code is present, the Google Source Code causes the interception of the patient's identifiers, along with the communications content – i.e., the name of the therapist selected, the mental health concern with whom or for which the user wants address  – and will transmit that information to Google properties, such as Google Analytics.

29.    Upon receipt of this unlawfully obtained health data, Google uses the information for marketing in its advertising systems and products, which include but are not limited to: Google Analytics, Google Ads, Google Display Ads, Google Tag and Tag Manager, Google Firebase SDK, Google APIs, and YouTube. As detailed below, while each of these systems and products operates individually on the front end to collect health information, on the back end (i.e., once within Google's systems), Google connects and aggregates the health information, along with other information that Google has acquired about individuals. In doing so, Google is able to amplify the knowledge and insight it has about patients, compile detailed and precise profiles on patients, and monetize that information into advertising revenue.

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

30.     Google Analytics offers website owners an opt-in IP anonymization feature. According to Google, this feature is designed to help site owners comply with their own privacy policies and the recommendations of data protection authorities. If the IP anonymization feature is enabled by the website owner, an additional parameter is added to the communication between website visitors' computers and the Google Analytics server, defined as aip=1. *See* image below:



31.     Accordingly, when the "aip" parameter does not appear, the IP address is not anonymized, thus enabling Google to identify the user's IP addresses and their online actions.

32.     7 Cups does not enable the IP anonymization feature on its website. This is demonstrated by the absence of the "aip" parameter has shown in the image below:



- 9 -

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

1      33.      By using the Google Analytics tool without the anonymized IP feature, 7

2   Cups is sharing its users' online activity with Google, along with their IP addresses, even

3   when users have not themselves shared (nor consented to share) such information.

4      34.      7 Cups' third-party disclosures to Google occur contemporaneously with

5   communications by Plaintiffs and Class members to Defendant's Platform.

6      35.      7 Cups begins sharing a users' activity the moment they enter the Platform.

7   Upon entering the homepage, visitors can browse for a mental health therapist or active

8   listener. Users are directed to a search page where they can search for a listener or

9   therapist using free keywords or filters such as age, country, gender, topic, and religion,

10   as shown in the image below:



FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

36.    After selecting from the search options, users are provided with a list of listeners and therapists that meet their selection criteria, as shown in the image below:



37.    All search information is automatically sent directly to Google. In the example below, the patient searched for "gender dysphoria" using a free text search. The user searched for a Male listener or therapist, 18-35 years old, from the United States, who specializes in LGBTQIA+ Issues, who speaks Arabic.



FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

1

2      38.     Upon selecting a listener or therapist and choosing to connect, the listener's

3   name and the user's connection request is automatically shared with Google.

4



26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

1

2

3

4

5

6

7

8

9

10



11

12      39.    In addition to data about active listeners and therapists, 7 Cups also shares

13   a user's forum activity with Google.

14      40.    In the image below, the user has clicked on the Bipolar, Schizophrenia &

15   Psychosis Support forum, and on a specific post named "What is Bipolar?"

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

41.     In addition to a user's clicks, text typed into the search bar is also transmitted to Google. In the image below, the user searched for information on eating disorders via the forum page:



42.     In addition to active listener or therapist support and forums, 7 Cups offers mindfulness exercises and wellness activities via its path page. A user's activity when visiting these pages is once again automatically shared with Google. In the image below, the user viewed the "Mindfulness Exercises" page and clicked the "Learning to Tolerate Anxiety" exercise.

- 14 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    43.    Armed with an IP address and this transmitted information, Google has the

20 ability to identify 7 Cups users who have shared private and personal information about

21 their mental health. Accordingly, 7 Cups, a website built on the promise of anonymity,

22 is disclosing its users' information with Google without the users' knowledge or consent.

23    44.    Google's access and use of this information can and does have profound

24 consequences that users of the 7 Cups would never anticipate. For instance, armed with

25 knowledge that a 7 Cups user is struggling with anxiety, Google can specifically target

26 that user with advertisements for medications, natural remedies, treatment providers and

27 more. The private health data entered into the 7 Cups Platform is some of the most private

28 information about a user – and highly profitable to Google and companies wishing to

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

advertise - and was provided under the guise that this information would stay private and remain confidential.

45. The ability to serve targeted advertisements to (or to otherwise profile) a specific user no longer turns upon obtaining the kinds of data with which most consumers are familiar (name, email addresses, etc.), but instead on the surreptitious collection of persistent identifiers, which are used in conjunction with other data points to build robust online profiles. These persistent identifiers are better tracking tools than traditional identifiers because they are unique to each individual, making them more akin to a social security number. Once a persistent identifier is sent "into the marketplace," it is exposed to—and thereafter may be collected and used by— an almost innumerable set of third parties.

46. Data harvesting is the fastest growing industry in the entire country. Between 2016 and 2018, the value of information mined from Americans increased by 86% for Meta and 40% for Google. Overall, the value internet companies derive from Americans' personal data increased almost 54%. Conservative estimates suggest that suggest that in 2018, internet companies earned $202 per American user. That value is expected to be $200 billion industry wide, or $434 per user.

**FACTUAL ALLEGATIONS AS TO PLAINTIFFS**

**A. PLAINTIFF CAYLYN GARLAND**

47. In or around 2017, Plaintiff Caylyn Garland downloaded Defendant's 7 Cups App to her Android mobile device and thereafter, until approximately January of 2023, Ms. Garland used the App as well as accessed the 7 Cup's website via her computer's browser.

48. Plaintiff Garland used the App to chat with a listener, specifically due to Defendant's repeated assurances that the information she shared would be anonymous. She used the App as a means to process difficult and private emotions that she was not

1    comfortable sharing with anyone else, including details about a difficult interpersonal

2    relationship.

3        49.    Plaintiff Garland also chose 7 Cups over other mental health services

4    because of the Platform's affordability and promised anonymity. The Platform is

5    advertised as a free service, but does not disclose that it generates revenue through the

6    unauthorized transmission of users' data to Google.

7        50.    Plaintiff Garland believed her private mental health data would stay private

8    and not be disclosed to third parties, as Defendant never disclosed that her information

9    was being shared with Google and she did not consent to the sharing of her private health

10   data.

11       51.    However, in violation of Plaintiff Garland's privacy, Defendant disclosed

12   Plaintiff's private and personal information with third parties without her knowledge or

13   consent.

14       52.    Shortly after chatting with a listener via the 7 Cups website and App,

15   Plaintiff Garland began to notice targeted social media advertisements specifically

16   related to the private information she shared in her conversations on the 7 Cups Platform.

17       53.    Plaintiff Garland would not have used the 7 Cups Platform if she had known

18   that her information would be shared with third parties.

19       54.    Plaintiff Garland intends to, desires to, and will use the 7 Cups website and

20   App again when she can do so with the assurance that her privacy will be maintained and

21   her personal health data will not be shared with data brokers, such as Google or other

22   similar companies and/platforms.

23   **B. PLAINTIFF CIERRA SERRANO**

24       55.    In or around 2017, Plaintiff Cierra Serrano downloaded the 7 Cups mobile

25   App on her iPhone and thereafter, until approximately May of 2023, used the App as well

26   as accessed the Platform via her computer's web browser.

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

56.     Plaintiff Serrano used the App to connect with a mental health therapist, and paid $150 a month for a period of four to five months for these therapy services.

57.     Plaintiff Serrano maintains receipts for online therapy with paid amounts of $150.00 on October 27, 2021 and May 25, 2023.

58.     Plaintiff Serrano chose to use the 7 Cups Platform over other therapy services because of the Platform's affordability and promised anonymity. Advertised as a free service, the Platform does not disclose that it generates revenue through the unauthorized disclosure of users' data to Google.

59.     Based on Defendant's repeated assurances that the information shared was anonymous, and the fact that she was in a therapeutic relationship with a mental health therapist, Plaintiff Serrano believed her protected health information would be safeguarded.

60.     Plaintiff Serrano sought therapy on the 7 Cups Platform to discuss emotions that she was not comfortable sharing with anyone else. Specifically, Plaintiff Serrano was dealing with a traumatic event causing chronic stress and anxiety.

61.     Shortly after discussing concerns with her therapist on the 7 Cups Platform, Plaintiff Serrano began to notice targeted advertisements specifically related to the private information discussed, including advertisements for clinical trials related to chronic stress and anxiety.

62.     In addition to using the 7 Cups Platform for her own therapy, Plaintiff Serrano volunteered as a mental health listener in or around 2020.

63.     In these reportedly anonymous conversations, users would share deeply personal emotions, mental health concerns, and private experiences. Users repeatedly mentioned feeling lonely, and some even shared details of sexual assault and abuse.

64.     Plaintiff Serrano would not have used the 7 Cups Platform, as either a patient or listener, had she known the information shared was not truly anonymous.

- 18 -

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

65.     Plaintiff Serrano intends to, desires to, and will use the 7 Cups website and App again when she can do so with the assurance that her privacy will be maintained and her personal health data will not be shared with data brokers, such as Google or other similar companies and/platforms.

## CLASS ACTION ALLEGATIONS

66.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action individually and on behalf of the following Classes:

> **Nationwide Class:** All natural persons residing in the United States who used the 7 Cups Platform and whose health information and/or other personal data was intercepted by, or disclosed to, Google through Google's tracking technology embedded in the 7 Cups website or App.

> **California Subclass:** All natural persons in California who used the 7 Cups Platform and whose health information and/or personal data was intercepted by, or disclosed to, Google through Google's tracking technology embedded in the 7 Cups website or App.

> **CLRA Subclass:** All natural persons  who paid for a subscription for the 7 Cups Platform and whose health information and/or other personal data was intercepted by, or disclosed to, Google through Google's tracking technology embedded in the 7 Cups website or App.

67.     Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) the Defendant, Defendant's subsidiaries, affiliates, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiffs' counsel and Defendant's counsel.

68.     **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiffs' counsel at this time, but individual joinder in this case is

1   impracticable. The Classes likely consists of millions of individuals, and the members
2   can be identified through Defendant 7 Cup's records.

3        69.   **Typicality:** Plaintiffs' claims are typical of the claims of the class members
4   because, among other things, Plaintiffs sustained similar injuries to that of Class
5   Members as a result of Defendant's uniform wrongful conduct, and their legal claims all
6   arise from the same events and wrongful conduct by Defendant.

7        70.   **Predominant Common Questions:** The Classes' claims present common
8   questions of law and fact, and those questions predominate over any questions that may
9   affect individual Class members. Common questions for the Classes include, but are not
10   limited to, the following:

11        a.   Whether Defendant engaged in the activities referenced herein;

12        b.   Whether Defendant collected Plaintiffs' and the Class Members' personal
13        data, including health data;

14        c.   Whether Defendant provided Plaintiffs' and the Class Members' personal
15        data, including health data, to third parties;

16        d.   Whether Defendant sold Plaintiffs' and Class Members' personal data,
17        including health data, for profit;

18        e.   Whether Defendant adequately disclosed its policy of providing personal
19        data, including health data, to third parties;

20        f.   Whether Defendant's collection, storage, and transmission to third
21        parties of the Plaintiffs' and Class Members' data in the matter alleged
22        violated federal, state, or local laws, or industry standards;

23        g.   Whether Defendant engaged in unfair, unlawful, or deceptive practices
24        by providing data to third parties;

25        h.   Whether Defendant violated consumer protection and privacy statues
26        applicable to Plaintiffs and members of the Class;

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

i.      Whether Defendant acted negligently in failing to properly safeguard Plaintiffs' and Class Members' personal data, including health data;

j.      Whether Defendant's acts and practices complained of herein amount to egregious breaches of social norms; and

k.      The nature of the relief, including equitable relief, to which Plaintiffs and Class members are entitled.

71.    **Ascertainability:** Class Members can easily be identified by an examination of Defendant's business records or other Documents in the Defendant's possession, custody or control.

72.    **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs' interests do not conflict with the interests of the Class Members and Plaintiffs have retained counsel experienced in complex class action cases to prosecute this case on behalf of the Class.

73.    **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since a joinder of all members is impracticable. Furthermore, as damages suffered by Class Members may be relatively small, the expense and burden of individual litigation make it impossible for class members to individually redress the wrongs done to them. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

74.    Accordingly, this class action is properly brought and should be maintained as a class action because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

1  superior to other available methods for fairly and efficiently adjudicating this
2  controversy.

3      75.   This class action is also properly brought and should be maintained as a
4  class action because Plaintiffs seek injunctive relief and declaratory relief on behalf of
5  the Class Members on grounds generally applicable to the proposed Class. Certification
6  is appropriate because Defendant has acted or refused to act in a manner that applies
7  generally to the proposed Class, making final declaratory or injunctive relief appropriate.

8  **CALIFORNIA LAW APPLIES TO THE NATIONWIDE CLASS**

9      76.   California substantive laws apply to each member of the Nationwide Class
10 and CLRA subclass. 7 Cups Terms of Service states "[t]he laws of California, U.S.A.,
11 excluding California's conflict of law rules, will apply to any disputes arising out of or
12 relating to these terms or the Services.  All claims arising out of or relating to these terms
13 or the Services will be litigated exclusively in the federal or state courts of San Mateo
14 County, California, U.S.A., and you and 7 Cups consent to personal jurisdiction in those
15 courts.  *7 Cups Terms of Service*, (effective May 15, 2020)
16 https://www.7cups.com/about/howitworks.php.

17     77.   By choosing California law for the resolution of disputes, 7 Cups concedes
18 that it is appropriate for this Court to apply California law to the instant dispute.

19     78.   Further, California's substantive laws may be constitutionally applied to the
20 claims of Plaintiffs and the Nationwide Class under the Due Process Clause, 14th Amend.
21 § 1, and the Full Faith and Credit Clause, Art. IV. § 1 of the U.S. Constitution. California
22 has significant contact, or significant aggregation of contacts, to the claims asserted by
23 Plaintiffs and Class members, thereby creating state interests to ensure that the choice of
24 California state law is not arbitrary or unfair.

25     79.   7 Cups maintains a California executive office at 828 Bryant Street, Suite B,
26 Palo Alto, California 94301.  Defendant also conducts substantial business in California,
27 such that California has an interest in regulating Defendant 7 Cups under its laws.
28

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

1   Defendant's decision to reside in California and avail itself of California's laws, renders

2   the application of California law to the claims herein continually permissible.

3         80.    The application of California laws to the Class is also appropriate under

4   California's choice of law rules because California has significant contacts to the claims

5   of Plaintiffs and the proposed Class, and California has a greater interest in applying its

6   laws here than any other interested state.

7   **TOLLING**

8         81.    Any applicable statute of limitations has been tolled by Defendant's knowing

9   and active concealment of the conduct and misrepresentations and omissions alleged

10  herein. Through no fault or lack of diligence, Plaintiffs and members of the Classes were

11  deceived and could not reasonably discover Defendant's deception and unlawful conduct.

12        82.    Plaintiffs and members of the Classes did not discover and did not know of

13  any facts that would have caused a reasonable person to suspect that Defendant was acting

14  unlawfully and in the manner alleged herein. As alleged herein, the representations made

15  by Defendant were material to Plaintiffs and members of the Classes at all relevant times.

16  Within the time period of any applicable statutes of limitations, Plaintiffs and members of

17  the Classes could not have discovered through the exercise of reasonable diligence the

18  alleged wrongful conduct.

19        83.    Particularly in light of the sensitivity of health information as a category,

20  privacy expectations rooted in federal and state law regarding such information, and the

21  invisibility of Google Source Code or other third party code on Defendant's Platform, at

22  all times, Defendant is and was under a continuous duty to disclose to Plaintiffs and

23  members of the Classes the true nature of the disclosures being made and the lack of an

24  actual "requirement" before the data was shared with it.

25        84.    Defendant knowingly, actively, affirmatively and/or negligently concealed

26  the facts alleged herein. Plaintiffs and members of the Classes reasonably relied on

27  Defendant's concealment.

28

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

85. Further, Defendant's unlawful tracking, collection, and monetization of Plaintiffs and Class Members' health information was done surreptitiously in a manner undetectable by patients. As a result, despite Plaintiffs and Class Members exercise of due diligence, they could not, and did not, discover the unlawful conduct described herein.

86. Plaintiffs only became aware of Defendant's wrongdoing alleged herein shortly before the filing of the complaint as a result of counsel's investigation.

87. For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's concealment, and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## FIRST CAUSE OF ACTION

### *Invasion of Privacy and Violation of the California Constitution, Art. 1, § 1*
### *(On behalf of Plaintiffs and the Classes)*

88. Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

89. Plaintiffs and Class members have a legally protected privacy interest in their private and personal information, including protected health information, that is collected by Defendant, and are entitled to the protection of their property and information against unauthorized access.

90. Defendant unlawfully invaded the privacy rights of Plaintiffs and Class members by (a) failing to adequately secure their private and personal information from disclosure to unauthorized parties for improper purposes despite a promise to do so; (b) disclosing their private, and personal information to unauthorized parties in a manner that is highly offensive to a reasonable person; and (c) disclosing their private and personal information to unauthorized parties without the informed and clear consent of Plaintiffs and Class members. This invasion into the privacy interest of Plaintiffs and Class members is serious and substantial.

91. For example and as described herein, 7 Cups begins sharing a users' activity

- 24 -

the moment they enter the Platform. Upon entering the homepage, visitors can browse for a mental health therapist or active listener. Users are directed to a search page where they can search for a listener or therapist using free keywords or filters such as age, country, gender, topic, and religion. After selecting from the search options, users are provided with a list of listeners and therapists that meet their selection criteria. All search information is automatically sent directly to Google so for example the patient who searched for "gender dysphoria" using a free text search along with his selection of a Male listener or therapist, 18-35 years old, from the United States, who specializes in LGBTQIA+ Issues, who speaks Arabic is all sent to Google along with the patient's/users IP address.  Similar search intrusions occurred to Plaintiffs' and Class members.

92.     Plaintiffs and Class members reasonably expected that their personal data, including browsing history, search history and information regarding their interactions with the Platform, as well as protected health information, which is found in free text searches and selected filter options provided by the Platform and connected to users without anonymization by their IP address, would be protected and secure from unauthorized parties, and that their private and personal information would not be disclosed to any unauthorized parties or disclosed for any improper purpose.

93.     The reasonableness of such expectations of privacy is supported by Defendant's unique position to monitor Plaintiffs' and Class members' behavior through their access to Plaintiffs' and Class members' private mobile devices. It is further supported by the surreptitious, highly-technical, and non-intuitive nature of Defendant's tracking.

94.     Defendant intentionally intruded on and into Plaintiffs' and Class Members' solitude, seclusion, right of privacy, or private affairs by intentionally designing the App and website to surreptitiously obtain, improperly gain knowledge of, review, and/or retain Plaintiffs' and Class members' activities through the monitoring technologies and activities described herein.

- 25 -

95.     These intrusions are highly offensive to a reasonable person, because they disclosed sensitive and confidential information about the user's physical and mental health, constituting an egregious breach of social norms. This is evidenced by, inter alia, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers' reasonable expectations.

96.     Further, the extent of the intrusion cannot be fully known, as the nature privacy invasion involves sharing Plaintiffs' and Class members' personal information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

97.     Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

98.     Defendant's actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Class members.

99.     As a result of Defendant's actions, Plaintiffs and Class members seek injunctive relief, in the form of Defendant's cessation of tracking practices in violation of state law, and ordered destruction of all personal data, including protected health information, obtained in violation of state law.

100.    As a result of Defendant's actions, Plaintiffs and Class members seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs and Class members seek punitive damages because Defendant's actions—which were malicious, oppressive, willful—were calculated to injure Plaintiffs and Class members and made in conscious disregard of Plaintiffs' and Class members' rights. Punitive damages are warranted to deter Defendant from engaging in future misconduct.

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

**SECOND CAUSE OF ACTION**

**Intrusion upon Seclusion**

*(On behalf of Plaintiffs and the Classes)*

101.   Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

102.   Plaintiffs and Class members reasonably expected that their personal data, including protected health information, would be protected and secure from unauthorized parties, and that their private and personal information would not be disclosed to any unauthorized parties or disclosed for any improper purpose.

103.   The reasonableness of such expectations of privacy is supported by Defendant's unique position to monitor Plaintiffs' and Class members' behavior through their access to Plaintiffs' and Class members' private mobile devices. It is further supported by the surreptitious, highly-technical, and non-intuitive nature of Defendant's tracking.

104.   Defendant intentionally intruded on and into Plaintiffs' and Class members' solitude, seclusion, or private affairs by intentionally designing the 7 Cups Platform to obtain, improperly gain knowledge of, review, and/or retain Plaintiffs' and Class members' activities through the monitoring technologies and activities described herein.

105.   These intrusions are highly offensive to a reasonable person. This is evidenced by, inter alia, California Supreme Court precedent, legislation enacted by Congress, rules promulgated, and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying location tracking. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs and Class members' personal information with potentially countless third-parties known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

106.   Plaintiffs and Class Members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

107.   Defendant's actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Class Members.

108.   As a result of Defendant's actions, Plaintiffs and Class Members seek injunctive relief, in the form of Defendant's cessation of tracking practices in violation of state law and ordered destruction of all personal data obtained in violation of state law.

109.   Plaintiffs and Class members also seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs and Class members seek punitive damages because Defendant's actions—which were malicious, oppressive, willful—were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendant from engaging in future misconduct.

### THIRD CAUSE OF ACTION

**Violation of the California Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

*(On Behalf of Plaintiffs and the Classes)*

110.   Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

111.   Defendant is subject to California's Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices…"

*"Unfair" Prong*

112.   The UCL prohibits "unfair competition," which is broadly defined as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Bus. & Prof. Code §17200.

113.   Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy,

- 28 -

and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's tracking, collection, and selling of the 7 Cups users' personal identifying and health information for advertising purposes is of no benefit to the 7 Cups users.

114.    Plaintiffs' and Class members' personal information has tangible monetary value and Plaintiffs and Class members were deprived of that value when their data was disseminated without their knowledge or consent.

115.    Defendant has made material misrepresentations and omissions, both directly and indirectly, related to the privacy-invasive and unlawful behaviors and practices detailed herein.

116.    As such, Defendant has engaged in unfair or deceptive acts in violation of the UCL.

117.    Defendant's unfair acts allege herein deceived and misled 7 Cups users. Defendant has taken advantage of the lack of knowledge, ability, experience, or capacity of consumers to the detriment of those consumers.

118.    Defendant's conduct also injures competing app developers, software designers and website operators that do not engage in the same unfair and unethical behavior.

119.    Defendant's violations were, and are, willful, deceptive, unfair, and unconscionable. Defendant is aware of the violations but have failed to adequately and affirmatively take steps to cure the misconduct.

### *"Fraudulent" Prong*

120.    Under the "fraudulent" prong, a business practice is prohibited if it is likely to mislead or deceive a reasonable consumer or, where the business practice is aimed at a particularly susceptible audience, a reasonable member of that target audience. *See Lavie v. Proctor & Gamble Co.,* 105 Cal.App.4th 496, 506-07 (2003).

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

121.   The UCL authorizes a civil enforcement action against "[a]ny person who engages, has engaged, or proposes to engage in unfair competition." Bus. & Prof. Code §17203. "[P]erson" includes "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." *Id*. §17201.

122.   Defendant intentionally misleads and deceives 7 Cups users to believe Defendant adheres to privacy-protected norms as well as through its own privacy policies.

123.   Defendant surreptitiously collects and sells the users' personal identifying information, including protected health information, and profile them for behavioral and contextual targeted advertising.

124.   Plaintiffs and Class members acted reasonably when they used the 7 Cups Platform, which they believed to be beneficial in helping with their wellbeing.

125.   Plaintiffs and Class members lost money or property as a result of Defendant's UCL violations because they would not have used the 7 Cups Platform absent Defendant's representations and omission of a warning that their information would be tracked, collected, and sold for contextual and behavioral advertising.

### *"Unlawful" Prong*

126.   Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating California's Constitutional Right to Privacy; Intrusion Upon Seclusion, Cal. Bus. & Prof. Code § 22575; the California Consumer Privacy Act (2018) ("CCPA"), Cal. Civ. Code § 1798.120(c), and the Health Information Technology for Clinical and Economic Health Act ("HITECH").

127.   Such conduct is ongoing and continues to date.

128.   Defendant's conduct further violates other applicable California and Federal regulations as alleged herein.

129.   Plaintiffs and Class Members are likely to continue to be damaged by Defendant's deceptive practices thus injunctive relief enjoining Defendant's deceptive practices is proper.

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

130.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

131.   Defendant's practices are therefore unfair, unlawful, and fraudulent under Section 17200 *et seq.* of the California Civil Code.

### FOURTH CAUSE OF ACTION

**Negligent Misrepresentation**

**Cal. Civ. Code §§ 1709-1710**

(*On Behalf of Plaintiffs and the Classes*)

132.   Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

133.   Defendant represented and represents that information collected by the 7 Cups Platform would be kept private, however Defendant improperly shared personal health data about users' mental health conditions with Google.

134.   The misrepresentations were communicated to Plaintiffs and the Class through the 7 Cups Privacy Policy.

135.   The misrepresentations concerned material facts that influenced Plaintiffs' and the Class members' use of the Platform.

136.   At the time Defendant made the misrepresentations, Defendant knew or should have known that the misrepresentations were false, or Defendant made the misrepresentations without knowledge of their truth or veracity.

137.   Plaintiffs and the Class members reasonably, justifiably, and detrimentally relied on the misrepresentations and, as a proximate result thereof, have and will continue to suffer damages including the diminution of the value of their data and actual damages associated with payment for therapy sessions.

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

**FIFTH CAUSE OF ACTION**

**Unjust Enrichment**

***(On Behalf of Plaintiffs and the Classes)***

138.   Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

139.   By collecting, storing, and using Plaintiffs' and Class members' personal data without their permission, Defendant was unjustly enriched at the expense of Plaintiffs and Class members. It would be inequitable, unjust, and unconscionable for Defendant to retain the benefit it obtained from using Plaintiffs' and Class members' personal data for advertising purposes.

140.   Plaintiffs seek disgorgement of all proceeds, profits, benefits, and other compensation obtained by Defendant from its improper and unlawful use and collection of Plaintiffs' and the Class members' personal data, as well as all other appropriate relief permitted by law of unjust enrichment, including reasonable attorneys' fees and costs of suit.

**SIXTH CAUSE OF ACTION**

**Violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA")**

**Cal. Penal Code § 502**

***(On Behalf of Plaintiffs and the Classes)***

141.   Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

142.   The California Legislature enacted the California Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA") to "expand the degree of protection afforded… from tampering, interference, damage, and unauthorized access to (including the extraction of data from) lawfully created computer data and computer systems," finding and declaring that "the proliferation of computer technology has resulted in a concomitant

- 32 -

proliferation of forms of unauthorized access to computers, computer systems, and computer data," and that "protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals.. ." Cal. Penal Code § 502(a).

143.   Plaintiffs' and members of the Classes' devices on which they utilized the 7 Cups Platform including their computers, smart phones, and tablets constitute "computers, computer systems, and/or computer networks" within the meaning of the CDAFA.

144.   Defendant violated § 502(c)(1)(B) of the CDAFA by knowingly accessing and without permission accessing Plaintiffs' and Class members' devices in order to obtain their personal information, including their device and location data, and in order for Defendant to share that data with third parties, in violation of 7 Cups users' reasonable expectations of privacy in their devices and data.

145.   Defendant violated Cal. Penal Code § 502(c)(2) by knowingly and without permission accessing, taking and using Plaintiffs' and the Class members' personally identifiable information.

146.   Defendant's violation caused a diminution in value of Plaintiffs and Class members personal information sufficient to establish actual economic damages.

147.   The computers and mobile devices that Plaintiffs and Class members used when accessing the 7 Cups Platform all have and operate "computer services" within the meaning of the CDAFA. Defendant violated §§ 502(c)(3) and (7) of the CDAFA by knowingly and without permission accessing and using those devices and computer services, or causing them to be accessed and used*, inter alia* in connection with Defendant's sharing of information with third parties.

148.   Defendant violated §§ 502(c)(6) and (c)(13) of the CDAFA by knowingly and without permission providing and/or assisting in providing third parties.

149.   Under California Penal Code § 502(b)(10) a "Computer contaminant" is defined as "any set of computer instructions that are designed to ... record, or transmit

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

1    information within computer, computer system, or computer network without the intent or
2    permission of the owner of the information."

3        150.    Defendant violated California Penal Code § 502(c)(8) by knowingly and
4    without permission introducing a computer contaminant into the transactions between
5    Plaintiffs and the Class members and websites; including but not limited to the code that
6    intercepted Plaintiffs' and the Class Members' private and personal data.

7        151.    As a direct and proximate result of Defendant's unlawful conduct within the
8    meaning of California Penal Code § 502, Defendant caused loss to Plaintiffs and the Class
9    members in an amount to be proven at trial, including that Plaintiffs and the Class members
10   were injured by the loss of value of their personal information. Plaintiffs and the Class
11   members are also entitled to recover their reasonable attorneys' fees under California Penal
12   Code § 502(e)(2).

13       152.    Plaintiffs and the Class members seek compensatory damages in accordance
14   with California Penal Code § 502(e)(1), in an amount to be proven at trial, and injunctive
15   or other equitable relief.

16       153.    Plaintiffs and the Class members are entitled to punitive or exemplary
17   damages pursuant to Cal. Penal Code § 502(e)(4) because Defendant's violations were
18   willful and, upon information and belief, Defendant is guilty of oppression, fraud, or
19   malice as defined in Cal. Civil Code § 3294.

20       154.    Plaintiffs and Class members have suffered irreparable and incalculable harm
21   and injuries from Defendant's violations. The harm will continue unless Defendant is
22   enjoined from further violations of this section. Plaintiffs and Class members have no
23   adequate remedy at law.

24       155.    Plaintiffs and Class members have also suffered irreparable injury from these
25   unauthorized acts of disclosure, their personal, private, and sensitive health information
26   have been collected, viewed, accessed, stored, and used by Defendant and third parties,

27
28

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

1   and have not been destroyed, and due to the continuing threat of such injury, have no
2   adequate remedy at law, entitled Plaintiffs to injunctive relief.

3                              **SEVENTH CAUSE OF ACTION**
4       **Unlawful Wiretapping and Interception of Electronic Communication**
5                          **Cal. Pen Code § 630(a) ("CIPA")**
6                *(On behalf of Plaintiffs the California subclasses)*

7       156.   Plaintiffs re-allege and incorporate the preceding allegations of this
8   Complaint with the same force and effect as if fully restated herein.

9       157.   The California Invasion of Privacy Act ("CIPA") is codified at Cal. Pen. Code
10  § 630, *et seq.*, and defines its purpose as:

11          The Legislature hereby declares that advances in science and technology have led
12          to the development of new devices and techniques for the purpose of eavesdropping
13          upon private communications and that the invasion of privacy resulting from the
14          continual and increasing use of such devices and techniques has created a serious
15          threat to the free exercise of personal liberties and cannot be tolerated in a free and
16          civilized society.
17  *See* Cal. Pen. Code § 630.

18      158.   Defendant aided and abetted third party Google to intercept components of
19  Plaintiffs' and Class members' private electronic communications and transmissions when
20  Plaintiffs and other Class members access Defendant's Platform within the State of
21  California.

22      159.   To establish liability under section 631(a) of California's Penal Code,
23  Plaintiffs need only establish that the Defendant, "by means of any machine, instrument,
24  contrivance, or in any other manner" does any of the following:

25          (1) "intentionally taps, or makes any unauthorized connection, whether
26              physically, electrically, acoustically, inductively, or otherwise, with any
27              telegraph or telephone wire, line, cable, or instrument, including the wire,
28

- 35 -

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

line, cable, or instrument of any internal telephonic communication system," or

(2) "**willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state**" (the "interception" clause) or

(3) "**uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained**" (the "use" clause) or

(4) "**aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section**".

160.   Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 2020 WL 1807978 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

161.   Here, Defendant's use of Google's spyware is a "machine, instrument, contrivance, or …other manner" used to engage in the prohibited conduct at issue here.

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

162.   At all relevant times, Defendant aids and abets Google to commit both unlawful interception and unlawful use under Section 631(a), surreptitiously and as a matter of course.

163.   Defendant's business practice injecting Google's software allowed third parties unauthorized by Plaintiffs and Class members to access, intercept, learn the contents of, and collect Plaintiffs and Class members' substantive health information, personally identifiable information and other data.

164.   At all relevant times, Defendant intentionally caused the internet communications between Plaintiffs and Class members on the one hand and Defendant's Platform on the other hand to be intercepted, eavesdropped upon, and recorded by Google by using its software embedded into the Platform.

165.   By its use of Google's software, Defendant aided and abetted Google to intercept and eavesdrop upon such conversations in real time while those conversations were being sent from or received in California.

166.   Plaintiffs and Class members have an objective, reasonable expectation of privacy in their communications on Defendant's Platform.

167.   Plaintiffs and Class members did not consent to, authorize, or know about Google's intrusion at the time it occurred.  Plaintiffs and Class members never agreed that Google could intercept, read, learn, collect, or disclose the content of their communications (*i.e.,* the personal information inputted into free text fields and searched and clicked) on the Platform.

168.   Plaintiffs and Class member had an objective interest in precluding the dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

169.   Defendant intentionally intrudes on Plaintiffs' and Class members' private life, seclusion, or solitude, without consent, in that Defendant purposefully installed code

- 37 -

or allowed Google to install code which allows Google to eavesdrop and learn the content of Defendant's users' communications and other browsing activities. Defendant directly participated in the interception, reading, and/or learning of the contents of the communications between Plaintiff, Class members and California-based web entities.

170.    The information Defendant intercepts while Plaintiffs and Class members are using its Platform includes personally identifiable information and other highly specific information and communications, including, without limitation, (1) patients' mental health concerns; (2) information regarding therapists with whom patient's/users are seeking therapy; (3) when a patient connects with a therapist and the name of that therapist;(4) a users' activity in the 7 Cups forums; and (5) a users' page views on the Platform.

171.    Defendant's conduct is highly objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy.

172.    Plaintiffs and Class members were harmed and suffered loss by Defendant's wrongful conduct and violations, including but not limited to, violation of the right to privacy and confidentiality of their electronic communications.

173.    Additionally, given the monetary value of individual personal information, Defendant deprived Plaintiffs and Class members of the economic value of their interactions with Defendant's Platform, without providing proper consideration for Plaintiffs' and Class members' property.

174.    Further, Defendant has improperly profited from its invasion of Plaintiffs and Class members' privacy in its use of their data for its economic value.

175.    As a result of the above violations and pursuant to CIPA section 637.2, Defendant is liable to Plaintiffs and Class members for the greater of treble actual damages related to their loss of privacy in an amount to be determined at trial or for statutory damages in the amount of $5,000 per violation. Section 637.2 provides "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiffs has suffered, or be threatened with, actual damages."

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

1        176.   Defendant's conduct is ongoing, and it continues to unlawfully intercept the

2  communications of Plaintiffs and Class members any time they visit Defendant's Platform

3  with Google code (i.e., Google Analytics) enabled without their consent. Plaintiffs and

4  Class members are entitled to declaratory and injunctive relief to prevent future

5  interceptions of their communications.

6        177.   Plaintiff further requests, as provided under CIPA, reasonable attorneys' fees

7  and costs of suit, injunctive and declaratory relief, and punitive damages in an amount to

8  be determined by a jury sufficient to prevent or deter the same or similar conduct by

9  Defendant.

## EIGHTH CAUSE OF ACTION

### Violation of the California Medical Information Act

### *Civil Code Section 56 et seq.* **("CMIA")**

### (*On behalf of Plaintiffs and the California Subclass*)

14        178.   Plaintiffs re-allege and incorporate the preceding allegations of this

15  Complaint with the same force and effect as if fully restated herein.

16        179.   7 Cups is deemed a provider of health care under Cal. Civ. Code Section

17  56.06, subdivision (b), because it offers software to consumers that is designed to maintain

18  medical information for the purposes of allowing its users to manage their information or

19  for the diagnosis, treatment, or management of a medical condition.

20        180.   The 7 Cups Platform is designed for users to store personally identifiable

21  information relating to their mental health, such as mental health diagnoses and symptoms

22  of mental or emotional distress. This information is "Medical Information" as defined by

23  Cal. Civ. Code Section 56.05(j).

24        181.   7 Cups is therefore subject to the requirements of the CMIA and obligated

25  under subdivision (d) to maintain the same standards of confidentiality required of a

26  provider of health care with respect to Medical Information that it maintains on behalf of

27  users.

28

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

182.   7 Cups stored in electronic form on its systems Plaintiffs' and Class members' Medical Information as defined in Cal. Civ. Code Section 56.05(j).

183.   Plaintiffs and Class members did not provide 7 Cups authorization, nor was 7 Cups otherwise unauthorized to disclose Plaintiffs' and Class members' Medical Information to an authorized third party, such as Google.

184.   In violation of the CMIA, 7 Cups knowingly and willfully disclosed the Medical Information of Plaintiffs and Class members without first obtaining "authorization," for its own financial gain.

185.   Specifically, 7 Cups violated Cal. Civil Code Section 56.10, subdivision (a) which prohibits a health care provider from disclosing medical information without first obtaining an "authorization," unless a statutory exception applies. 7 Cups did not follow any of the proper procedures enumerated in Cal. Civil Code Section 56.11 to obtain proper authorization.

186.   7 Cups disclosed medical information without first obtaining authorization when it disclosed to third parties, including Google, Plaintiffs' and Class members' intimate health data without consent, including information concerning mental and emotional health. No statutory exception applies.

187.   This information was shared with third parties, including Google, whose business is to sell advertisements based on that data it collects about individuals, including the data Plaintiffs and the Class shared with the 7 Cups Platform.

188.   This release of Plaintiffs' and Class members' Medical Information to third parties, including Google, was an affirmative act in violation of Cal. Civ. Code Section 56.10(a).

189.   Cal. Civ. Code Section 56.10(d) reinforces these restrictions by stating that unless "expressly authorized by a patient, enrollee, or subscriber, or as provided by subdivisions (b) or (c), a provider of health care . . . shall not intentionally share, sell, use

- 40 -

1    for marketing, or otherwise use medical information for a purpose not necessary to provide
2    health care services to the patient."

3        190.   As a direct and proximate result of 7 Cups' violation of Cal. Civ. Code
4    Section 56.10(a), Plaintiffs' and Class members' Medical Information was viewed.

5        191.   7 Cups' unauthorized disclosures of Plaintiffs' and Class members' Medical
6    Information has caused injury to Plaintiffs and Class members.

7        192.   In addition, Cal. Civil Code Section 56.101, subdivision (a), requires that
8    every provider of health care "who creates, maintains, preserves, stores, abandons,
9    destroys, or disposes of medical information shall do so in a manner that preserves the
10   confidentiality of the information contained therein."

11       193.   7 Cups failed to maintain, preserve, and store medical information in a
12   manner that preserves the confidentiality of the information contained therein because it
13   disclosed to third parties Plaintiffs' and Class members' intimate health data without
14   consent, including information concerning physical and emotional health, psychiatric
15   diagnoses, mental health treatment, and more.

16       194.   Thus, 7 Cups shall be subject to the remedies and penalties provided under
17   subdivisions (b) and (c) of Cal. Civ. Code Section 56.36.

18       195.   Accordingly, Plaintiffs and Class members are entitled to: (1) nominal
19   damages of $1,000 per violation; (2) actual damages, in an amount to be determined at
20   trial; (3) statutory damages pursuant to 56.36(c); (4) punitive damages pursuant to Cal.
21   Civ. Code Section 56.35; and (5) reasonable attorneys' fees and other litigation costs
22   reasonably incurred.

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

## NINTH CAUSE OF ACTION

### Violation of the California Consumers Legal Remedies Act

### Cal. Civ. Code § 1750, *et seq.*

### (*On behalf of Plaintiff Serrano and the CLRA Subclass*)

196.   Plaintiff Serrano re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

197.   The Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") is a comprehensive statutory scheme to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

198.   7 Cups is a "person" as defined by Civil Code §§ 1761(c) and 1770 and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

199.   Civil Code section 1770, subdivision (a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

200.   Civil Code section 1770, subdivision (a)(7) prohibits one who is involved in a transaction from "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another."

201.   Plaintiff and members of the Subclass are "consumers" as defined by Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

202.   7 Cups acts and practices were intended to and did result in the sale of products and services to Plaintiff and Subclass members in violation of Civil Code § 1770, including, but not limited to, the following:

(a)      Representing that goods or services have characteristics that they do not have;

- 42 -

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

(b)    Representing that goods or services are of a particular standard, quality, or grade when they were not;

(c)    Advertising goods or services with intent not to sell them as advertised;

(d)    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; and

(e)    Representing the transaction confers or involves rights, remedies, or obligations that it does not have or that are prohibited by law.

203.   7 Cups representations and omissions were material because they were likely to and did deceive reasonable consumers about the adequacy of 7 Cups ability to protect the confidentiality of patients' highly sensitive and confidential private health data.

204.   Had 7 Cups disclosed to Plaintiff and Subclass members that its transmitted private health data to third parties, Plaintiff and Subclass members would not have paid for the service or paid less. Plaintiff and Subclass members acted reasonably in relying on 7 Cups misrepresentations and omissions, the truth of which he could not have discovered.

205.   As a direct and proximate result of 7 Cups violations of California Civil Code § 1770, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with 7 Cups as they would not have paid for therapy services or would have paid less for such services but for 7 Cups' violations alleged herein.

206.   Plaintiff, individually and on behalf of the Subclass members, seeks an injunction requiring 7 Cups to adopt privacy measures and cease the disclosure of their personal and health data to third parties and adopt privacy measure designed to protect and secure their highly sensitive and confidential information.

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

207.   Pursuant to Cal. Civ. Code § 1782(a), on August 25, 2023, Plaintiff sent Defendant a notice of its alleged violations of the CLRA by certified mail return receipt requested. Thirty (30) days after the date of such notification has passed and Defendant has failed to provide appropriate relief for its violations of the CLRA.  Thus, Plaintiff seeks monetary damages for violation of the CLRA.

208.   In accordance with Cal. Civ. Code § 1780(d), Plaintiff's CLRA venue declaration is attached hereto as **Exhibit A.**

### **TENTH CAUSE OF ACTION**

**Breach of Implied Contract**

***(On behalf of Plaintiffs and the Classes)***

209.   Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

210.   Plaintiffs and Class members sought medical treatment and information from Defendant through the 7 Cups Platform.

211.   In order to obtain medical treatment and information from Defendant through the 7 Cups Platform, Plaintiffs and Class members provided their intimate health data and private medical information to Defendant.

212.   When Plaintiffs and Class members exchanged their intimate health data and private medical information in order to obtain information and services from Defendant, they entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose such data and information to third parties without their consent.  Indeed, among other representations and promises regarding its safeguarding of users' personal information and intimate health data, Defendant's privacy explicitly states, "**It is our policy that we do not share your Personal Information with other businesses for marketing uses**."

213.   Plaintiffs and Class members reasonably believed and expected that Defendant would not disclose this data to third parties such as Google because, inter alia,

- 44 -

1   Defendant made numerous promises not to disclose this information and to not use their

2   information for marketing purposes.

3       214.   Plaintiffs and Class members accepted Defendant's offers and provided

4   their sensitive personal and medical information to Defendant in exchange for

5   information and services.

6       215.   Plaintiffs and Class members would not have entrusted Defendant with their

7   sensitive personal and medical information in the absence of an implied contract between

8   them and Defendant obligating itself to not disclose Plaintiffs' and Class members'

9   medical information without their consent.

10      216.   Defendant breached these implied contracts by disclosing the medical

11  information of Plaintiffs and Class members to Google, and using it for non-medical

12  purposes, i.e., for marketing uses.

13      217.   As a direct and proximate result of Defendant's breaches of these implied

14  contracts, Plaintiffs and the Class sustained damages as alleged herein, including:

15          a.   Sensitive and confidential information that Plaintiffs and Class

16          members intended to remain private is no longer private; and

17          b.   Defendant took valuable information from Plaintiffs and Class

18          members and derived benefit therefrom, including obtaining enhanced

19          advertising and analytics services from Google, without Plaintiffs' and

20          Class members' knowledge or informed consent and without sharing the

21          benefits with Plaintiff or Class members.

22      218.   Plaintiffs and Class members are entitled to nominal, compensatory, and

23  consequential damages as a result of Defendant's breaches of implied contract.

## **PRAYER FOR RELIEF**

25      WHEREFORE, Plaintiffs, individually and on behalf of all Class members

26  proposed in this Complaint, respectfully requests that the Court enter a judgment in his

27  favor and against Defendant, as follows:

28

- 45 -

FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP

1    A.    Determining that this action may be maintained as a class action under Rule

2    23 of the Federal Rules of Civil Procedure and appointing and her Counsel to represent the

3    Class;

4    B.    Finding Defendant's conduct was unlawful as alleged herein;

5    C.    Enjoining Defendant from engaging in the wrongful conduct complained of

6    herein;

7    D.    Requiring restitution and disgorgement of the revenues wrongfully retained

8    as a result of Defendant's wrongful conduct;

9    E.    Awarding Plaintiffs and Class members actual damages, compensatory

10    damages, punitive damages, statutory damages, and statutory penalties, in an amount to be

11    determined;

12    F.    Awarding Plaintiffs and Class members costs of suit and attorneys' fees, as

13    allowable by law; and

14    G.    Granting such other and further relief as this court may deem just and proper.

15    **<u>JURY DEMAND</u>**

16    Plaintiffs hereby demand a trial by jury of all issues so triable.

17    DATED: December 4, 2023

18    Respectfully submitted,

19    */s/ Ronald A. Marron*
20    Ronald A. Marron
21    **LAW OFFICES OF RONALD A. MARRON**
      RONALD A. MARRON
22    *ron@consumersadvocates.com*
23    ALEXIS M. WOOD
      *alexis@consumersadvocates.com*
24    KAS L. GALLUCCI
25    *kas@consumersadvocates.com*
      651 Arroyo Drive
26    San Diego, California 92103

27    ***Attorney for Plaintiffs and the Proposed Class***

28

- 46 -
FIRST AMENDED CLASS ACTION COMPLAINT
*Garland et al v. 7 Cups of Tea, Co.*, No. 3:23-cv-04492-PCP