**GREENBERG TRAURIG, LLP**
Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
Adam M. Korn (SBN 333270)
*Adam.Korn@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700

*Attorneys for Defendant 7 Cups of Tea, Co.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAYLYN GARLAND and CIERRA SERRANO individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>7 CUPS OF TEA, CO. a Delaware corporation,<br><br>    *Defendant*. | CASE NO. 5:23-cv-04492-PCP<br>Assigned to Hon. P. Casey Pitts<br><br>**DEFENDANT 7 CUPS OF TEA, CO.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Rebekah S. Guyon; Request for Judicial Notice; Proposed Order]<br><br>Action Filed:    Aug. 30, 2023<br><br>Date:    March 28, 2024<br>Time:    10:00 a.m. |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on March 28, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Judge P. Casey Pitts in the United States District Court for the Northern District of California, Courtroom 8, located on the 4th Floor of the Robert F. Peckham Courthouse, at 280 South 1st Street, San Jose, California, Defendant 7 Cups of Tea, Co. will and hereby does move for the court to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant 7 Cups of Tea, Co. moves to dismiss the Complaint on the grounds that Plaintiffs have not plead an injury in fact under Article III and because Plaintiffs fail to state a claim upon which relief may be granted. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers filed herein, and the argument of counsel at the time of any hearing.

## STATEMENT OF RELIEF SOUGHT

7 Cups of Tea, Co. seeks an order dismissing Plaintiffs' First Amended Complaint in its entirety under Fed. R. Civ. P. 12(b)(1) because they fail to allege an Article III injury and under Fed. R. Civ. P. 12(b)(6) because Plaintiffs fail to allege sufficient facts to state a plausible claim under any theory alleged.

DATED:  January 26, 2024                  GREENBERG TRAURIG, LLP

                                     By:    /s/ Rebekah S. Guyon
                                            Rebekah S. Guyon
                                            Attorneys for Defendant 7 Cups of Tea, Co.

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.    INTRODUCTION ....................................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................................... 4

    A.   7 Cups Discloses Its Collection And Use Of Website Activity ........................ 4
    B.   Plaintiffs' Claims .............................................................................................. 5
    C.   7 Cups Does Not Use Google Analytics For Retargeted Ads Based On Sensitive Customer Information. ...................................................................................... 6

III.  PLAINTIFFS HAVE NO STANDING ..................................................................... 7

    A.   Standards For Dismissal Under Rule 12(b)(1) .................................................. 7
    B.   Constitutional Requirements For Standing ...................................................... 7
    C.   Plaintiffs' Alleged Harms Are Not Traceable To 7 Cups ................................. 8
    D.   Plaintiffs Have Alleged No Concrete Harm ..................................................... 9

IV.  PLAINTIFFS FAIL TO STATE A CLAIM ............................................................ 11

    A.   Standards For Dismissal Under Rule 12(b)(6) ................................................ 11
    B.   Plaintiffs' Claims Are Time Barred ................................................................ 11

        1.   Plaintiffs' Claims Accrued No Later than 2017 And Should Not Be Tolled ...... 11
        2.   Laches Bars Plaintiffs' Claims ................................................................ 13

    C.   7 Cups Did Not Invade Plaintiffs' Privacy Or Seclusion ............................... 14
    D.   Garland Alleges No Loss Or Damages ........................................................... 16

        1.   Garland Lacks Statutory Standing Under The UCL ............................... 16
        2.   Plaintiffs Allege No Loss Under The CDAFA ....................................... 17
        3.   Garland Alleges No Damages To Support Contract And Misrepresentation Claims .................................................................................................... 17

    E.   Plaintiffs' Adequate Remedy At Law Forecloses Their UCL And CLRA Claims ......... 18
    F.   Plaintiffs Fail To State A Claim Under The CIPA .......................................... 19
    G.   Plaintiffs Have No Claim Under The CMIA ................................................... 21
    H.   Plaintiffs Have Not Alleged An Unauthorized Access Under The CDAFA ......... 22
    I.   Plaintiffs Fail To State A Claim For Negligent Misrepresentation ................ 23
    J.   Plaintiffs Have No Implied Contract Claim ................................................... 24
    K.   Unjust Enrichment Is Not A Cause Of Action ............................................... 24
    L.   Plaintiffs' Consent Bars Their Claims ........................................................... 24

V.   CONCLUSION ......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abdulaziz v. Twitter, Inc.*,
   No. 19-CV-06694-LB, 2020 WL 6947929 (N.D. Cal. Aug. 12, 2020) .................................................. 8

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000) ......................................................................................................... 17

*In re Apple Processor Litig.*,
   No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) ........................................................... 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................................ 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................................ 11

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ...................................................................................... 11, 20

*Byars v. Sterling Jewelers, Inc.*,
   No. 5:22-CV-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ...................................... 9

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. 2021) ...................................................................................... 11, 25

*Casaretto v. Coldwell Banker Realty*,
   No. 10-CV-00509-LHK, 2011 WL 1576780 (N.D. Cal. Apr. 26, 2011) ........................................ 11

*Cook v. GameStop, Inc.*,
   No. 2:22-CV-1292, 2023 WL 5529772 (W.D. Pa. Aug. 28, 2023) ...................................... 10, 11, 20

*Cottle v. Plaid Inc.*,
   536 F. Supp. 3d 461 (N.D. Cal. 2021) .......................................................................................... 17

*Cousin v. Sharp Healthcare*,
   2023 WL 4484441 ............................................................................................................. 8, 10, 16, 20

*Eisenberg v. BBVA USA*,
   No. 3:20-cv-2368-L-AHG, 2021 WL 5177773 (S.D. Cal. July 12, 2021) ...................................... 9

*Ellsworth v. Schneider Nat'l Carriers, Inc.*,
   No. 5:20-CV-01699-SB-SP, 2021 WL 6102514 (C.D. Cal. Oct. 28, 2021) .................................... 9

*Erhart v. Bofl Holding, Inc.*,
   269 F. Supp. 3d 1059 (S.D. Cal. 2017) .................................................................................... 21, 22

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................ 16

*Facebook, Inc. v. Power Ventures, Inc.*,
  No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ...................... 22

*Free Kick Master LLC v. Apple Inc*,
  No. 15-CV-3403-PJH, 2016 WL 777916 (N.D. Cal. Feb. 29, 2016) ............... 13, 14

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
  771 F.3d 1119 (9th Cir. 2014) ............................................................................ 18

*Garcia v. Enter Holdings, Inc.*,
  78 F. Supp. 3d 1125 (N.D. Cal. 2015) ................................................................. 25

*Gardiner v. Walmart, Inc.*,
  20-CV-04618-JSW, 2021 WL 4992539 (N.D. Cal. July 28, 2021)....................... 18

*In re Gilead Scis. Secs. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................ 11

*In re Google Inc.*,
  No. 13-MD-02430-LHK, 2013 WL 5423918, at *1 (N.D. Cal. Sept. 26, 2013)................................ 25

*In re Google, Inc. Privacy Pol'y Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................... 15

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................................ 3, 20, 21

*Guar. Tr. Co. of N.Y. v. York*,
  326 U.S. 99 (1945)............................................................................................... 18

*Guzman v. Polaris Industries Inc.*,
  49 F.4th 1308 (9th Cir. 2022) ............................................................................. 19

*Heeger v. Facebook, Inc.*,
  509 F. Supp. 3d 1182 (N.D. Cal. 2020) ......................................................... 10, 15

*Huluwazu v. Snyder*,
  No. 17-CV-03386-LHK, 2017 WL 5991865 (N.D. Cal. Dec. 4, 2017) ................. 11

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022) ...................................................... 2, 10, 15

*Inmediata Health Grp*
  *. Corp.*, No. 19-CV-2353, 2020 WL 2126317 (S.D. Cal. May 5, 2020) ............... 10

*In re iPhone Application Litig.*,
  2011 WL 4403963 ............................................................................................... 16

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................... 15

*James v. Allstate Ins. Co.*,
    No. 3:23-CV-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ............................ 17

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ........................................................................................ 13

*Javier v. Assurance IQ, LLC*,
    649 F. Supp. 3d 891 (N.D. Cal. 2023) ........................................................... 1, 12, 14

*Ji v. Naver Corp.*,
    No. 21-cv-05143, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ..................................... 15

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ................................................................................. 3, 19

*Lauter v. Anoufrieva*,
    2011 WL 13175659 (C.D. Cal. Nov. 28, 2011) ............................................................. 11

*Lewis v. Wachovia Mortg.*,
    No. 11-CV-122-H (RBB), 2011 WL 13356106 (S.D. Cal. June 6, 2011) ........................... 17

*Licea v. Cinmar, LLC*,
    No. CV 22-6454-MWF (JEM), 2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) ..................... 21

*Lightoller*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) ............................................ 10

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................. 14, 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 .................................................................................................................. 8

*Mikulsky v. Noom, Inc.*,
    __ F. Supp. 3d. __, 2023 WL 4567096 (S.D. Cal. July 17, 2023) ............................ 2, 9, 10

*Moledina v. Marriott Int'l, Inc.*,
    No. 222CV03059SPGJPR, 2022 WL 16630276 (C.D. Cal. Oct. 17, 2022) ................... 24, 25

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ........................................................................................ 11

*Novak v. United States*,
    795 F.3d 1012 (9th Cir. 2015) ........................................................................................ 8

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) .................................................................... 3, 22

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Nowak v. Xapo, Inc.*,
    No. 5:20-cv-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ............................ 17

*NYC Topanga, LLC v. Bank of Am.*,
    No. CV 14-09721-AB EX, 2015 WL 4075844, at *6 (C.D. Cal. July 2, 2015) .................................. 14

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ................................................................................ 17

*Plumlee v. Pfizer, Inc.*,
    No. 13-CV-00414-LHK, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ............................. 12

*Quigley v. Yelp*,
    No. 17-CV-03771-IRS, 2018 WL 7204066 (N.D. Cal. Jan 22, 2018) ................................ 19

*Romo v. Wells Fargo Bank, N.A.*,
    No. 15-CV-03708-EMC, 2016 WL 324286 (N.D. Cal. Jan. 27, 2016) ............................. 12

*Rosenow v. Facebook, Inc.*,
    No. 19-CV-1297-WQM-MDD, 2020 WL 1984062 (S.D. Cal. April 7, 2020) ............ 19, 20

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) ............................................................................ 15

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ............................................................................................. 7

*Saul Zaentz Co. v. Wozniak Travel, Inc.*,
    627 F. Supp. 2d 1096 (N.D. Cal. 2008) ............................................................................ 13

*Scott v. Breeland*,
    792 F.2d 925 (9th Cir. 1986) ............................................................................................... 7

*Shay v. Apple Inc.*,
    20CV1629-GPC(BLM), 2021 WL 1733385 (S.D. Cal. May 3, 2021) ............................... 19

*Silver v. Stripe Inc.*,
    No. 4:20-cv-01896-YGR, No. 4:20-cv-01896-YGR, 2021 WL 3191752 (N.D. Cal.
    July 28, 2021) ..................................................................................................................... 24

*Smith v. Facebook, Inc.*,
    745 F. App'x (9th Cir. 2018) ......................................................................................... 4, 25

*Snipes v. Wilkie*,
    No. 18-cv-03259-TSH, 2019 WL 1283936 (N.D. Cal. Mar. 20, 2019) ........................... 25

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .......................................................................................... 2, 18

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................. 16

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................... 1, 7, 8

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
   830 F. App'x 821 (9th Cir. 2020) ...................................................................... 7

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   313 F. Supp. 3d 1056 (N.D. Cal. 2018) .......................................................... 17

*Toston v. JetBlue Airways Corp.*,
   No. 2:23-cv-01156-SVW-E, 2023 U.S. Dist. LEXIS 148675 (C.D. Cal. Aug. 23, 2023) ................. 10

*Underhill v. Kornblum*,
   No. 16-CV-1598-AJB-WVG, 2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ...................................... 19

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015) ........................................................................... 3

*United States v. Forrester*,
   512 F.3d 500 (9th Cir. 2007) ......................................................................... 15

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ......................................................................... 7

*Weizman v. Talkspace, Inc.*,
   No. 23-CV-00912-PCP, 2023 WL 8461173 (N.D. Cal. Dec. 6, 2023) (Pitts, J.) ................................. 18

*Williams v. DDR Media, LLC*,
   No. 22-CV-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ................................. 21

*Wilson v. Rater8, LLC*,
   20-CV-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ................................. 21

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) .............................................................. 15

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................................... 11

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) .............................................................. 3, 15, 20

**State Cases**

*Bank of the W. v. Superior Court*,
   2 Cal. 4th 1254 (1992) ................................................................................. 18

*Cadlo v. Owens-Illinois, Inc.,*
    125 Cal. App. 4th 513 (2004) ............................................................................. 3

*Chrisman v. City of Los Angeles,*
    155 Cal. App. 4th 29 (2007) ....................................................................... 22, 23

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.,*
    35 Cal. 3d 197 (1983) ..................................................................................... 23

*De Havilland v. FX Networks, LLC,*
    21 Cal. App. 5th 845 (2018) ........................................................................ 3, 24

*Eisenhower Med. Ctr. v. Sup. Ct.,*
    226 Cal. App. 4th 430 (2014) ................................................................. 3, 21, 22

*Folgelstrom v. Lamps Plus, Inc.,*
    195 Cal. App. 4th 986 (2011) ......................................................................... 15

*Foster v. Sexton,*
    61 Cal. App. 5th 998 (2021) ........................................................................... 23

*Heritage Pac. Fin., LLC v. Monroy,*
    215 Cal. App. 4th 972 (2013) ......................................................................... 24

*Hernandez v. Hillsides, Inc.,*
    47 Cal. 4th 272 (2009) ............................................................................... 2, 15

*Hill v. Nat'l Collegiate Athletic Assn.,*
    7 Cal. 4th 1 (1994) ......................................................................................... 14

*Jacome v. Spirit Airlines Inc.,*
    No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ............... 20, 25

*Korea Supply Co. v. LockheedMartin Corp.,*
    29 Cal. 4th 1134 (2003) .................................................................................. 18

*Kwikset Corp. v. Superior Court,*
    246 P.3d 877 (2011) ....................................................................................... 16

*Lazar v. Super. Ct.,*
    12 Cal. 4th 631 (1996) ................................................................................. 3, 23

*People v. Childs,*
    220 Cal. App. 4th 1079 (2013) ........................................................................ 22

*Ribas v. Clark,*
    38 Cal. 3d 355 (1985) ..................................................................................... 20

*Scott v. JPMorgan Chase Bank, N.A.,*
    214 Cal. App. 4th 743 (2013) .......................................................................... 23

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Shulman v. Grp. W Prods., Inc.*,
   18 Cal. 4th 200 (1998) ........................................................................................ 15

*Taus v. Loftus*,
   40 Cal. 4th 683 (2007) ........................................................................................ 15

*Troyk v. Farmers Grp., Inc.*,
   171 Cal. App. 4th 1305 (2009) .......................................................................... 16

*Unilab Corp. v. Angeles-IPA*,
   244 Cal. App. 4th 622 (2016) ............................................................................ 24

*Warden v. Kahn*,
   99 Cal. App. 3d 805 (1979) ................................................................................ 21

**Federal Statutes**

18 U.S.C. § 2510(8) .................................................................................................. 20

Federal Wiretap Act ............................................................................................ 19, 20

Wiretap Act, 18 U.S.C. § 2510(4) ........................................................................... 19

**State Statutes**

18 Pa. Cons. Stat. § 5702 ........................................................................................ 20

Cal. Bus & Prof. Code § 17204 .............................................................................. 16

Cal. Bus. & Prof. Code § 17208 ............................................................................. 11

Cal. Civ. Code § 56.05(i) ........................................................................................ 22

Cal. Civ. Proc. Code § 338(a) ................................................................................. 11

Cal. Penal Code § 502(b)(1) .................................................................................... 23

Cal. Penal Code § 502(c) ..................................................................................... 3, 22

Cal. Penal Code § 502(e)(1) .................................................................................... 17

Cal. Penal Code § 502(e)(5) .................................................................................... 11

Cal. Penal Code § 631(a) .................................................................................... 19, 20

California Comprehensive Computer Access and Fraud Act, Cal. Penal Code § 502
   ................................................................................................................. 2, 17, 22, 23

California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ............. 2

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ........ 2

CDAFA ...................................................................................................................... 3, 11, 17, 18, 22, 23

CIPA ....................................................................................................................... 2, 3, 11, 18, 19, 20, 25

CLRA .................................................................................................................................... 11, 12, 18, 19

CMIA .................................................................................................................................. 3, 11, 18, 21, 22

Medical Information Act, Cal. Civ. Code § 56 et seq. ................................................................................ 3

Pennsylvania Wiretapping and Electronic Surveillance Control Act ...................................................... 20

Privacy Act, Cal. Penal Code § 631 ............................................................................................ 2, 19, 20, 21

UCL ................................................................................................................... 2, 11, 12, 16, 18, 19, 25

**Rules**

Rule 12(b)(1) .............................................................................................................................................. 1, 7

Rule 12(b)(6) ............................................................................................................................................. 2, 11

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is a case about a free online emotional support platform using basic analytics software to improve the no-cost services it provides to millions of individuals nationwide. Plaintiffs Caylyn Garland and Cierra Serrano, long-time users of Defendant 7 Cups of Tea, Co.'s ("7 Cups") free platform, have filed an amended complaint rife with insinuations that 7 Cups collected the contents of their private conversations and used that information to sell targeted ads to them. But the facts in plaintiffs' First Amended Complaint show that 7 Cups only used Google Analytics to collect IP addresses, page views, mouse-clicks, and potentially search queries. While plaintiffs' attorneys have created salacious screenshots on the topics of "gender dysphoria" or "LGBTQ+" issues, plaintiffs themselves do not claim to have ever used the tools customized in screenshots made by their counsel. But even if they did, Google's policies for advertisements would strictly forbid the use of that information for targeted ads. Plaintiffs allege no facts that would allow the Court to infer that 7 Cups flouted these policies for the seven years that plaintiffs used its platform. To the contrary, 7 Cups provided clear disclosures regarding what data it collects and how it uses it, including for marketing purposes, in the 2017 Privacy Policy upon which plaintiffs claim to have relied when they joined 7 Cups.

Setting aside the implausibility of their arguments, plaintiffs' First Amended Complaint fails to cure the fatal statute of limitations and laches flaws in their claims. Plaintiffs claim that the targeted advertisements allegedly placing them on notice of their injuries began seven years ago. Their conclusory request that the statute of limitations be tolled because they could not discover the source of their alleged harm earlier is belied by the very Privacy Policy upon which they claim to have relied—which discloses 7 Cups's collection of website interactions for marketing purposes (even though 7 Cups did not and does not share private communications with third-parties for advertising purposes as they claim). *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023).

Moreover, plaintiffs' claims are insufficient under Rule 12(b)(1). To establish "the irreducible constitutional minimum" of standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs cannot satisfy traceability

here because the harm that they claim—targeted ads based on the contents of their conversations with a therapist or listener—are not traceable to 7 Cups's alleged collection and use of their unidentified page views, mouse clicks, and search criteria or filters with Google Analytics. Further, even if 7 Cups's had acquired sensitive information from plaintiffs with Google Analytics (which plaintiffs do not allege), that would not have led to the ads that plaintiffs complain of because Google's policies prohibit the use of sensitive information for advertisements. Once stripped away of these inflammatory insinuations, it is plain that this is a case about the collection of IP addresses and basic, non-sensitive website interactions, which countless courts have held is not a concrete harm under Article III. *See Mikulsky v. Noom, Inc.*, __ F. Supp. 3d. __, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023).

Plaintiffs' claims should also be dismissed pursuant to Rule 12(b)(6). First, 7 Cups did not disclose anything private. The collection and use of their IP address along with their page clicks and searches (FAC ¶¶ 1, 23, 35-42)—so that 7 Cups could improve the functionality of its Platform (RJN, Ex. 1 at 3-4)—is not a constitutional invasion of Plaintiffs' privacy (Claim 1) or intrusion upon their seclusion (Claim 2). Their claims fail because (1) they had no reasonable expectation of privacy in their IP addresses, search queries and selections, and page clicks provided to access 7 Cups's services and (2) 7 Cups's acquisition of information that they voluntarily provided is not an egregious breach of social norms. *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009).

Second, nearly half of Garland's claims fail for lack of a plausible loss or harm. She fails to plead a loss that could support statutory standing under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL") and the California Comprehensive Computer Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA") (Claims 3 and 6). She also has not pled any plausible damages in support of her breach of implied contract or negligent misrepresentation claims (Claims 4 and 10).

Third, Plaintiffs' FAC—by seeking statutory and actual damages—forecloses any claim under the UCL and the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA") (Claims 3 and 9), which provide only equitable remedies. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020).

Fourth, Plaintiffs have not alleged a plausible violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 (Claim 10). Their CIPA claim fails because Section 631 does not prohibit

a party to a communication—like 7 Cups—from recording it, and sharing it after it is recorded. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021). This claim also fails because CIPA prohibits only the *interception* of the *contents* of a communication. Plaintiffs allege an acquisition by Google long after the communications were received on servers supporting the Platform, which is not an interception contemporaneous with transmission. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). "[R]ecord information," *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014), such as the clicks, search selections, and pages and content viewed that Plaintiffs claim were acquired, is not actionable.

Fifth, Plaintiffs have no claim under the Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56 et seq. (Claim 8). They do not allege that 7 Cups shared information regarding their "medical history, mental or physical condition, or treatment"—the only information protected under the CMIA. *Eisenhower Med. Ctr. v. Sup. Ct.*, 226 Cal. App. 4th 430, 434 (2014).

Sixth, Plaintiffs have not alleged a hack in violation of the CDAFA (Claim 6). The CDAFA only prohibits a person from "knowingly access[ing]" a computer system or data "without permission." *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (citing Cal. Penal Code § 502(c)). Case law is clear that unauthorized access under the CDAFA requires bypassing a technical barrier or unauthorized use of login credentials akin to a "hack" into Plaintiffs' device or computer, which Plaintiffs do not allege. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 966 (N.D. Cal. 2014).

Seventh, their remaining common law claims are insufficiently plead. Negligent misrepresentation (Claim 4) requires pleading with particularity "facts which show how, when, where, to whom, and by what means the representations were tendered." *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 645 (1996); *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004). Plaintiffs come nowhere close to satisfying this heightened standard, providing no facts about the specific false statements they themselves (and not other members of the putative class) relied on when signed up for Platform in 2017. 7 Cups has breached no agreement (Claim 10); it fully complied with the Privacy Policy that Plaintiffs claim to have relied upon. Unjust enrichment (Claim 5) "is not a cause of action." *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018).

Eighth, Plaintiffs' conceded reliance and consent to 7 Cups's Privacy Policy when they enrolled in 2017—which discloses the collection and use of data that they now complain of—is dispositive of

1  Plaintiffs' claims. *See* RJN, Ex. 1 at 1-4; *Smith v. Facebook, Inc*., 745 F. App'x, 8 (9th Cir. 2018).

2      Plaintiffs' First Amended Complaint should be dismissed with prejudice.

3  ## II.    FACTUAL BACKGROUND

4  ### A.    7 Cups Discloses Its Collection And Use Of Website Activity

5      7 Cups provides a free emotional support platform consisting of a website, www.7cups.com (the

6  "Website"), and mobile application ("App") (together, the "Platform"). FAC ¶ 11. The 7 Cups Platform

7  provides emotional support and chat-based counselling free of charge to its users with the option to

8  purchase premium therapy services. *Id*. ¶¶ 49, 58. 7 Cups is a leader in the virtual mental health services

9  space; peer-reviewed publications have shown the 7 Cups model works as an effective treatment modality

10  "for a broad spectrum of mental health conditions including perinatal mood disorders, postpartum

11  depression, anxiety, and schizophrenia spectrum disorders." *Id*. ¶¶ 13-14.

12      Pursuant to its mission of providing its members with a safe space to share their emotional needs,

13  7 Cups does not require users to provide their name, address, full date of birth, or age when enrolling on

14  the Platform. *Id*. ¶ 15. When chatting with a volunteer listener, members are discouraged from providing

15  information that could identify them. *Id*.

16      7 Cups is transparent regarding the data it collects from its members. When Plaintiffs enrolled on

17  the Platform in 2017 and, as alleged, relied on the representations communicated to them through 7 Cups'

18  Privacy Policy, *id*. ¶¶ 134, 137, the Privacy Policy informed them, under the heading "Browser Information

19  and Usage Information" that 7 Cups collects:

20  > We log web browser information (e.g., **Internet Protocol addresses** and browser types)
21  > and other **usage information** from 7 Cups of Tea's Sites and 7 Cups of Tea's Listening
> Platform such as **page view tallies, time spent on each page, geographic location**
22  > **information, page browsing information**, subject matter browsing information and
> operating system information.

23  *Id*., Ex. 1 at 3 (emphasis added).[1] The Privacy Policy upon which Plaintiffs claim to have relied also

24  expressly informed them that this data would be used for marketing purposes:

25

26  [1]    Using virtually the same language, the current Privacy Policy provides, "**Browser Information and Cookies. We use web browser information** (e.g., **Internet Protocol addresses** and browser types)

27  **and other usage information** from 7 Cups[ ] Platform such as **page view tallies**, **time spent on each page**, geographic location information, **page browsing information, [and] subject matter browsing**

28  **information**[.]" *Id*., Ex. 3 at 20 (Privacy Policy dated July 26, 2022) (emphasis added).

**We use browser information, cookies and pixel tags to determine whether a communication service or marketing material should be deployed on your browser** when you are visiting 7 Cups of Tea's Site or using 7 Cups of Tea's Listening Platform. **We may also use browser information, cookies and pixel tags:** to determine how you arrived at 7 Cups of Tea's Site or 7 Cups of Tea's Listening Platform, to determine whether you are a return visitor, to help us improve our product and service offerings, for quality assurance and training purposes, to help diagnose problems with our servers, to gather broad demographic information, **to administer and optimize our services, to deliver marketing or other materials to you on behalf of third parties** and for other lawful purposes.

RJN, Ex. 1 at 4 (emphasis added).[2]

## B. Plaintiffs' Claims

Plaintiffs' claims arise from their use of the 7 Cups Platform starting in 2017 and continuing through 2023. *Id.* ¶¶ 47-48, 55-57. Plaintiffs claim that they relied on 7 Cups's Privacy Policy (quoted above) in deciding to use the Platform. FAC ¶¶ 134, 137. Garland claims to have chatted with a listener on the Platform. *Id.* ¶¶ 47-48. Serrano allegedly purchased premium therapy services. *Id.* ¶¶ 55-57.

Plaintiffs claim that "shortly after" Garland started using a chat and Serrano spoke to a therapist through 7 Cups in 2017, they both "began to notice targeted advertisements specifically related to" information that Garland chatted about and Serrano disclosed to a therapist. *Id.* ¶¶ 52, 61. Both Plaintiffs claim that the topics of these targeted advertisements were information they shared with a listener or therapist via 7 Cups and _not_ "anyone else." *Id.* ¶¶ 52, 61. Nonetheless, they claim that they continued to use 7 Cups over the next six years. FAC ¶¶ 47, 55, 57.

Based on these allegations, Plaintiffs would have the court imply that the 7 Cups disclosed the contents of their private conversations to Google, but the facts that Plaintiffs allege show that 7 Cups only used Google Analytics to collect standard website interactions—not chats or therapy conversations:

- IP addresses (FAC ¶ 24);

- Search queries and pre-populated filters or selections for finding a listener or therapist (*id.* ¶¶ 36, 37, 41);

---

[2]     The Privacy Policy in effect when Plaintiffs enrolled defined "Cookies" as "pieces of information that some websites transfer to a visitor's web browser accessing the website and are used for record-keeping purposes at many websites. Use of cookies makes web-surfing easier by performing certain functions such as saving passwords, lists of potential purchases and personal preferences regarding the use of the particular website, and ensuring that the user does not see the same ad repeatedly." RJN, Ex. 1 at 5; *see also id.*, Ex. 3 at 21 ("Cookies are small files, typically of letters and numbers, downloaded onto your computer or mobile device when you visit certain websites.").

- Pages viewed (*id*. ¶ 32); and

- Mouse "clicks," which may include the name of a listener or therapist selected (*id*. ¶¶ 38, 40).

*See also id*. ¶ 23.

While Plaintiffs' counsel created incendiary screenshots to enflame the Court with the implication that 7 Cups used Plaintiffs' individually-identifying searches for "gender dysphoria" or "LGBTQ issues," for advertisements, FAC ¶ 43, Plaintiffs themselves do not claim to have even used the features that their counsel customized in screenshots. Moreover, by Plaintiffs' own allegations, even if their search queries and selections, pages viewed, or clicks were collected, that information would not be associated with them personally, because they were not required to provide their name or identifying information when joining 7 Cups's Platform. *Id.* ¶ 15.

### C.     7 Cups Does Not Use Google Analytics For Retargeted Ads Based On Sensitive Customer Information.

Google Analytics is one of the most popular website and mobile application analytics services on the Internet, providing website and platform developers like 7 Cups detailed analytics on how users interact with their websites. *See* RJN, Ex. 5. Google imposes strict limitations on the use of information collected through Google Analytics for advertisements that forecloses Plaintiffs' salacious theory that their most intimate conversations were "exploit[ed]" to target them with advertisements. FAC ¶ 1. Google does not "allow targeting users based on sensitive interest categories," and does not allow "advertisers to promote products and services from sensitive interest categories." RJN, Ex. 4 at 33 (*Personalized advertising*, SUPPORTGOOGLE.COM, https://support.google/com/adspolicy/answer/143465, last accessed Jan. 26, 2024). Google further prohibits "personalized advertising" and "targeting users" based on "personal struggles, difficulties, and hardships," including "personal failings, struggles, or traumatic personal experiences." *Id.* at 35. Expressly disallowed topics for personalized and targeted advertisements include "[r]elationship hardships," and "[a]buse and trauma," like Garland and Serrano claim to have discussed via 7 Cups's Platform here. *Id.* at 36. Further, Google does not allow targeted ads or personalized advertising based on the topics in the inflammatory screenshots taken by plaintiffs' counsel relating to "[s]exual orientation," and "[t]ransgender identification." *Id.* at 37, 38. Google requires users of its Google Analytics service to adhere to these Personalized advertising policies. RJN, Ex. 2 ¶ 7 at 12 ("If You use Google

Analytics Advertising Features, You will adhere to the Google Analytics Advertising Features policy (available at support.google.com/analytics/bin/answer.py?hl=en&topic=2611283&answer=2700409).").

Google also prohibits the use of Google Analytics to "assist or permit any third party to pass information, hashed or otherwise, to Google that Google could use or recognize as personally identifiable information." *See, e.g.*, RJN, Ex. 2 at 12. This policy is consistent with 7 Cups's own policies, which discourage users from providing information that could identify them personally on the Platform. FAC ¶ 15.

## III.   PLAINTIFFS HAVE NO STANDING

### A.   Standards For Dismissal Under Rule 12(b)(1)

The plaintiff "bears the burden of establishing that [federal court] jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). On a facial attack, a court accepts as true only "well-pleaded factual allegations." *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 830 F. App'x 821, 822 (9th Cir. 2020). On a factual attack, a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

### B.   Constitutional Requirements For Standing

To establish "the irreducible constitutional minimum" of standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548. Under Article III, "an injury in law is not an injury in fact." *Ramirez*, 141 S. Ct. at 2205. "Traditional tangible harms," like physical and monetary harms, qualify as "concrete" injuries. *Id*. at 2204. So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. But courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*.

1    "The second required element for Article III standing is causation. This means that 'there must be

2    a causal connection between the injury and the conduct complained of.'" *Novak v. United States*, 795 F.3d

3    1012, 1018–19 (9th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61(1992)).

4    **C.      Plaintiffs' Alleged Harms Are Not Traceable To 7 Cups**

5         Plaintiffs allege <u>no harm</u> plausibly <u>caused</u> by 7 Cups's collection of their data. Plaintiffs claim that

6    7 Cups "shared [their] data with [Google] for use in targeted advertisements. . . . . [T]his is merely a

7    conclusion without sufficient factual support." *Cousin*, 2023 WL 4484441, at *8. Their speculation that

8    they were the targets of personalized advertising based on intimate information disclosed during their

9    online chats with therapists or listeners on the Platform is simply not credible. FAC ¶¶ 52, 61. Plaintiffs do

10   not allege that the contents or transcripts of these chats were ever transmitted to Google or anyone else,

11   and Google's own terms of service and policies would *prohibit* the use of that information for

12   advertisements. RJN, Ex. 2 at 12 (instructing that an operator "will not assist or permit any third party to

13   pass information, hashed or otherwise, to Google that Google could use or recognize as personally

14   identifiable information."); *id.*, Ex. 4 at 35 (prohibiting the use of information regarding personal hardships

15   or identity and belief for personalized advertisements or targeted advertisements).

16        Plaintiffs' conjecture about Google's "ad-tracking capabilities"—alleging that Google can

17   "follow[] patient's around the Internet" based on its collection of visitors' "persistent identifiers" to "target

18   such visitors with personalized advertisements" (FAC ¶¶ 24-26)—fails to supply a "causal connection"

19   between Plaintiffs' alleged harm and 7 Cups's conduct. *Novak*, 795 F.3d at 1018-19. Plaintiffs claim that

20   7 Cups used Google Analytics to collect IP addresses, queries and selections from pre-populated filters,

21   pages viewed, and mouse clicks, but they do not claim that they provided anything sensitive through these

22   basic interactions on 7 Cups's Platform. FAC ¶¶ 24, 32, 36, 37, 38, 40, 41. But even if they had, it is not

23   plausible to infer that 7 Cups's used that information for six years to target them with ads in direct violation

24   of Google's advertising policies. *E.g.*, RJN, Ex. 2 ¶ 7 at 12. "These facts do not plausibly establish that [7

25   Cups'] alleged misconduct"—its use of Google Analytics—"caused the harms" that plaintiffs claim.

26   *Abdulaziz v. Twitter, Inc.*, No. 19-CV-06694-LB, 2020 WL 6947929, at *6 (N.D. Cal. Aug. 12, 2020) (no

27   Article III standing where political dissident-plaintiff did not explain how security breach of his Twitter

28   data by Saudi government caused the harms he alleged, *i.e.*, interrogation and imprisonment of his relatives

8

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   in Saudi Arabia).

2   **D.      Plaintiffs Have Alleged No Concrete Harm**

3        Plaintiffs' claims arise from 7 Cups's alleged acquisition of their unidentified page views, mouse

4   clicks, searches and IP addresses that they voluntarily provided on 7 Cups's Platform. FAC ¶¶ 1, 23, 35-

5   42; *see, supra*, § II(B). 7 Cups's collection of this data is not a concrete harm.

6        In *Ramirez*, the Supreme Court "rejected the proposition that a plaintiff automatically satisfies the

7   injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize

8   that person to sue to vindicate that right." *Id*. at 2205 "Article III grants federal courts the power to redress

9   harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal

10  infractions." *Id*. Contending that a statutory violation is "of the type that [gives] rise to standing . . . misses

11  the point of *TransUnion*"—the harm alleged must bear a 'close relationship' to the kind of harm long

12  recognized by American law [.]" *Ellsworth v. Schneider Nat'l Carriers, Inc.*, No. 5:20-CV-01699-SB-SP,

13  2021 WL 6102514, at *4-5 (C.D. Cal. Oct. 28, 2021) (quoting *Ramirez*, 141 S. Ct. at 2208-09); *see*

14  *Eisenberg v. BBVA USA*, No. 3:20-cv-2368-L-AHG, 2021 WL 5177773, at *2 (S.D. Cal. July 12, 2021)

15  ("a pure procedural violation—on its own—is insufficient"); *see also Byars v. Sterling Jewelers, Inc.*, No.

16  5:22-CV-01456-SB-SP, 2023 WL 2996686 at *3-4 (C.D. Cal. Apr. 5, 2023).

17       Plaintiffs have not alleged any concrete harm that bears a close relationship to a substantive right

18  of privacy. "To survive a motion to dismiss, a plaintiff must identify the 'specific personal information she

19  disclosed that implicates a protectable privacy interest.'" *Mikulsky*, 2023 WL 4567096, at *5 (citing *Byars*,

20  2023 WL 2996686, at *3). Here, Garland claims that she chatted with a listener and Serrano claims to have

21  used a therapist, but Plaintiffs do not allege any facts to suggest that the contents of these communications

22  were shared with Google. FAC ¶¶ 1, 23-24, 35-42. Plaintiffs do not claim to have even used the features

23  shown in screenshots taken by their counsel, let alone claim that their own website interactions allegedly

24  collected with Google Analytics were sensitive—or used for advertising purposes if they were sensitive—

25  which Google's own policies prohibits. Plaintiffs' "conclusory allegation" that they disclosed "personal

26  information" "does not allow the Court to determine whether Plaintiff has a protectable privacy interest in

27  that information," even when a plaintiff happens to provide information on a health-related platform. *See*

28  *Mikulsky*, 2023 WL 4567094, at *5 (conclusory allegation that plaintiffs provided "personal information"

9

on health and wellness platform that focuses on helping individuals lose weight and lead healthier lives" that app operated shared with a third-party without permission did not establish concrete harm under Article III); *see Inmediata Health Grp. Corp.*, No. 19-CV-2353, 2020 WL 2126317 at *8 (S.D. Cal. May 5, 2020) (exposure of plaintiffs' "medical claim information including dates of service, diagnosis codes, procedure codes and treating physicians" not a concrete harm).

As numerous district courts have recognized, the acquisition of online "browsing activity," which is all that plaintiffs claim 7 Cups's plausibly collected here, does not confer standing. *Cook v. GameStop, Inc.*, No. 2:22-CV-1292, 2023 WL 5529772, at *5 (W.D. Pa. Aug. 28, 2023); *see Lightoller*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023); *Toston v. JetBlue Airways Corp.*, No. 2:23-cv-01156-SVW-E, 2023 U.S. Dist. LEXIS 148675, *6 (C.D. Cal. Aug. 23, 2023). "Plaintiffs allege that disclosure of their browsing activity resulted in a disclosure of sensitive medical information. [ ] While Plaintiffs provide an example of a search by a hypothetical patient, they fail to state what information they each provided to [7 Cups], via their browsing activity, that was subsequently disclosed to [Google]. . . . Plaintiffs do not explain what personal or health information they entered on the webpage, which was then subsequently shared with [Google]." *Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *3-4.

Plaintiffs' claim that 7 Cups acquired or shared their IP addresses with browsing activity is also not a concrete harm. FAC ¶¶ 25-29. As countless courts have held, Plaintiffs have no privacy interest in their IP addresses. *See, e.g.*, *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("there is no legally protected privacy interest in IP addresses."). Regardless, the acquisition and sharing of "basic contact information"—which plaintiffs do not even claim to have provided here—"does not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" and does "not trigger a protectable privacy interest." *Mikulsky*, 2023 WL 4567096, at *5; *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022) ("[T]he Court is hard pressed to conclude that basic contact information, including one's email address, phone number, or Facebook or Zynga username, is private information."). Plaintiffs "did not enter any personally identifying information at any point during [their] interaction. Not [their] name. Not [their] address. . . . . In effect, everything [Plaintiffs] did on [7 Cups]'s [Platform] was completely anonymous. So, [their] allegations do not set forth a concrete harm." *Cook*, 2023 WL 5529772, at *4.

1    **IV.    PLAINTIFFS FAIL TO STATE A CLAIM**

2         **A.    Standards For Dismissal Under Rule 12(b)(6)**

3         A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the

4    complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss under Rule

5    12(b)(6), a plaintiff must plead facts showing that his right to relief rises above "the speculative level." *Bell*

6    *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of

7    action, supported by mere conclusory statements, do not suffice," and pleadings that are "no more than

8    conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678–79

9    (2009). A court need not accept as true "allegations that are merely conclusory, unwarranted deductions of

10   fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

11        **B.    Plaintiffs' Claims Are Time Barred**

12             **1.    Plaintiffs' Claims Accrued No Later than 2017 And Should Not Be Tolled**

13        The statute of limitations for Plaintiffs' claims is between one to four years.[3] All of Plaintiffs' claims

14   arise from their interactions with the 7 Cups Platform beginning in 2017. *See* FAC ¶¶ 47, 55. Plaintiffs did

15   not file suit until six (6) years later. Their claims are time-barred.

16        Plaintiffs attempt to avoid the applicable statutes of limitations by asserting, without any factual

17   basis, that "all applicable statutes of limitation have been tolled based on the discovery rule," and

18   "Defendant is estopped from relying on any statutes of limitations." *See* FAC ¶¶ 81-87 ("Any applicable

19   statute of limitations has been tolled by Defendant's knowing and active concealment of the conduct and

20   misrepresentations and omissions alleged herein"). But Plaintiffs fail to allege any facts showing why they

21   ─────────────────
[3]        *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) ("[u]nder the CIPA, the
22   applicable statute of limitations is one year."); *Lauter v. Anoufrieva*, 2011 WL 13175659, at *7 (C.D. Cal.
     Nov. 28, 2011) ("A claim for invasion of the California constitutional right to privacy has a statute of
23   limitations of one year."); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 624 (N.D. Cal. 2021) (two-year
     limitations period to intrusion upon seclusion claim); *Casaretto v. Coldwell Banker Realty*, No. 10-CV-
24   00509-LHK, 2011 WL 1576780, at *1 (N.D. Cal. Apr. 26, 2011) ("statute of limitations for a negligent
     misrepresentation claim is two years."); *Huluwazu v. Snyder*, No. 17-CV-03386-LHK, 2017 WL 5991865,
25   at *5 (N.D. Cal. Dec. 4, 2017) (unjust enrichment has a two or three-year statute of limitations); *Yumul v.*
     *Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) ("three-year statute of limitations for
26   actions under the CLRA"); Cal. Civ. Proc. Code § 338(a) (three-year statute of limitations for claims of
     actual damages under CMIA); Cal. Penal Code § 502(e)(5) (statute of limitations for CDAFA is "three
27   years."); Cal. Bus. & Prof. Code § 17208 ("any cause of action pursuant to [the UCL] shall be commenced
     within four years after the cause of action accrued.").

28

─────────────────

11

could not have timely discovered their alleged injury earlier, or their reasonable diligence. Plaintiffs "cannot rely on the discovery rule to save their claims from the statute of limitations." *Romo v. Wells Fargo Bank, N.A.*, No. 15-CV-03708-EMC, 2016 WL 324286, at *5 (N.D. Cal. Jan. 27, 2016) (holding discovery rule does not apply because plaintiffs failed to provide any "explanation as to why [their injury] should not have been discovered earlier"); *see also Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014 WL 695024, at *10 (N.D. Cal. Feb. 21, 2014) ("Because Plaintiff has failed to meet her burden to adequately plead facts supporting equitable tolling under the discovery rule, the Court finds that Plaintiff's claims under the CLRA, UCL, and FAL are time-barred.").

7 Cups's Privacy Policy, available to Plaintiffs in 2017—and upon which they claim to have relied at the time (*see* FAC ¶¶ 49, 58, 204, 212, 214)— undermines their conclusory allegation that they could not discover the now-complained-of behavior. *See* FAC ¶ 85 ("Defendant's unlawful tracking, collection, and monetization of Plaintiffs and Class Members' health information was done surreptitiously in a manner undetectable by patients."). 7 Cups's 2017 Privacy Policy expressly disclosed the "use [of] browser information, cookies and pixel tags to determine whether a communication service or marketing material should be deployed on your browser" and "to determine how you arrived at 7 Cups [ ] Platform[ ] . . . to deliver marketing or other materials to you on behalf of third parties[.]" *See* RJN, Ex. 1 at 3-4; *see also id*. at 4-5 (7 Cups's 2017 Privacy Policy providing 7 Cups "may use and share such aggregated information for training and quality assurance purposes, for purposes of delivering our services, for purposes of expanding and improving our services and for other lawful purposes.").

To the extent Plaintiffs suggest tolling is warranted because the *names* of third parties that "deliver[ed] marketing or other materials to you" RJN, Ex. 1 at 3-4, were "unknown," this argument has been soundly rejected. *See* FAC ¶¶ 96, 105. Under the delayed discovery doctrine, "*knowledge* of injury, not knowledge of a *particular defendant's role* in the injury, triggers inquiry notice." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (emphasis added) (granting defendants' motion to dismiss because plaintiff "was on inquiry notice as a result of his visit to Assurance's website in January 2019," and "a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of *all potential causes of that injury*") (emphasis in original).

Here, Plaintiffs indisputably possessed knowledge of their alleged inquiry in 2017, when they claim

1   to have started receiving the unwanted targeted ads for which they blame 7 Cups. FAC ¶¶ 52, 61. Moreover,

2   7 Cups's 2017 Privacy Policy would have placed Plaintiffs on inquiry notice that their data had been

3   collected and disclosed (*See* RJN, Ex. 1 at 3-4; *see also id*. at 4-5). Yet Plaintiffs still did not file suit until

4   six years later. All of their claims are time-barred.

5   ## 2.   Laches Bars Plaintiffs' Claims

6        Plaintiffs' claims are also barred by the doctrine of laches. Courts applying laches consider 1) the

7   unreasonableness of the delay, and 2) prejudice to the defendant if the suit were to continue. *Jarrow*

8   *Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 838 (9th Cir. 2002). The doctrine of laches prohibits

9   claims brought by parties who "sleep" on their rights when they "knew or should have known about its

10  potential cause of action." *Saul Zaentz Co. v. Wozniak Travel, Inc*., 627 F. Supp. 2d 1096, 1109 (N.D. Cal.

11  2008) (dismissing plaintiff's claims against defendant on basis of laches as the "'knew or should have

12  known' standard allows a laches defense to be based on either actual or constructive knowledge").

13       To determine whether the delay was unreasonable, courts "borrow" the analogous limitations

14  period. *See Jarrow*, 304 F.3d at 836. Indeed "if any part of the allegedly wrongful conduct occurred outside

15  of the limitations period, courts presume that the plaintiff's claims are barred by laches." *Saul Zaentz*, 627

16  F. Supp. 2d at 1113. In addition to comparing the relevant statute of limitations period, courts also consider

17  whether the plaintiff has proffered a legitimate excuse for its delay. *Id.*

18       Here, Plaintiffs' six-year delay in bringing suit is unreasonable. Plaintiffs knew or should have

19  known about their claims in 2017—six years before filing the complaint, when they allegedly began

20  receiving the targeted advertisements from which their claims arise, *see* FAC ¶¶ 52, 61, and after they were

21  on inquiry notice of 7 Cups's use of their data for marketing purposes as disclosed in the Privacy Policy

22  on which they claim to have relied. *Id*. ¶¶ 49, 58, 204, 212, 214. The six-year delay creates a "strong

23  presumption that laches is a bar to" all Plaintiffs' claims. *See Free Kick Master LLC v. Apple Inc,* No. 15-

24  CV-3403-PJH, 2016 WL 777916, at *7 (N.D. Cal. Feb. 29, 2016) (holding plaintiffs' claims are barred by

25  the doctrine of laches because "limitations period for laches starts when the plaintiff knew or should have

26  known about its potential cause of action."). Plaintiffs do not even attempt to overcome the presumption in

27  favor of laches created by their lengthy delay.

28       Plaintiffs' excuses for delay are unreasonable. Plaintiffs' suggestion that tolling is warranted

13

1   because the "extent of the intrusion" or identity of defendant "cannot be fully known" (FAC ¶¶ 96, 105) is

2   misdirected; the clock started running once Plaintiffs' had actual or constructive knowledge of injury, not

3   the identity of a defendant. *Javier*, 649 F. Supp. 3d at 901. Plaintiffs allege that "[s]hortly after" they started

4   using the 7 Cups Platform, they "began to notice targeted advertisements." *See* FAC ¶¶ 52, 61. And 7

5   Cups's 2017 Privacy Policy placed Plaintiffs on at least constructive notice that their data had been

6   collected and disclosed (*See* RJN, Ex. 1 at 3-4; *see also id.* at 4-5). Indeed, Plaintiffs claim to have relied

7   on the disclosures in the 2017 Privacy Policy when signing up for 7 Cups's services. *See* FAC ¶¶ 49, 58,

8   204, 212, 214.[4]

9       Further, Plaintiffs' unreasonable six-year delay in bringing the lawsuit has prejudiced 7 Cups. *See*

10  *Free Kick Master*, 2016 WL 777916, at *7 (recognizing "a defendant may establish prejudice by showing

11  that as a result of the delay, it may incur additional liability for damages."). The sheer length of time that

12  has passed—6 years—will make it difficult for 7 Cups to "locate [] record[s]," and, "plaintiffs' delay in

13  filing suit will potentially increase the amount of damages plaintiffs could pursue, for each year of alleged"

14  conduct while plaintiffs sat on their rights. *Id.* Plaintiffs' claims are barred by the doctrine of laches.

15      **C.    7 Cups Did Not Invade Plaintiffs' Privacy Or Seclusion**

16      To state a claim for invasion of privacy (Claim 1), a plaintiff must allege (1) a legally protected

17  privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) a serious invasion

18  of the protected privacy interest. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 6 (1994). "The

19  California Constitution and the common law set a high bar for an invasion of privacy claim," *Low v.*

20  *LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), and "[a]ctionable invasions of privacy must

21  be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach

22  of the social norms underlying the privacy right," *Hill*, 7 Cal. 4th at 27, 37. Likewise, to state a claim for

23  intrusion upon seclusion (Claim 2), Plaintiffs must show that 7 Cups (1) "intru[ded] into a private place,

24  conversation or matter, (2) in a manner highly offensive to a reasonable person." *Taus v. Loftus*, 40 Cal.

25  4th 683, 725 (2007) (citing *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998)). "The tort is

---

[4]    Even if Plaintiffs were to assert they never read the disclosures; it matters not whether Plaintiffs
failed to read the 7 Cups's 2017 Privacy Policy. *See NYC Topanga, LLC v. Bank of Am.*, No. CV 14-09721-
AB EX, 2015 WL 4075844, at *6 (C.D. Cal. July 2, 2015) ("Plaintiff was on notice of that fact as of June
2005 . . . Plaintiff's failure to read the Agreement cannot support a claim for delayed discovery.").

proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011). Courts routinely assess both torts together and analyze the parallel elements of "reasonable expectations of privacy" and "the offensiveness or seriousness of the intrusion." *Hernandez*, 47 Cal. 4th at 288.

Both claims fail here. First, Plaintiffs had no "objectively reasonable" expectation of privacy in their search queries and selections or page views—features of 7 Cups's Platform that they do not even claim to have used—or their IP addresses. *See* FAC ¶¶ 1, 23-24, 35-42; *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 987 (N.D. Cal. 2014); *Heeger*, 509 F. Supp. 3d at 1189; *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007) ("Internet users have no expectation of privacy in the . . . IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers."); *Ji v. Naver Corp.*, No. 21-cv-05143, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (same); *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1108 (9th Cir. 2014) (no expectation of privacy in "[i]nformation about the address of the Facebook webpage the user was viewing").

Second, 7 Cups's alleged sharing of unidentified search queries or selections and page views is not "sufficiently serious and unwarranted as to constitute an egregious breach of the social norms." *Hernandez*, 47 Cal. 4th at 295 (citations omitted); *I.C.*, 600 F. Supp. 3d at 1049 ("the Court does not view the collection of" basic contact information "so private that their revelation would be highly offensive to a reasonable person."); *see Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal. 2008) (theft of a laptop containing unencrypted personal information provided in a job application, including social security numbers, was not an "egregious breach" of social norms). "Even disclosure of very personal information"—which Plaintiffs do not allege occurred here—"has not been deemed an egregious breach of social norms sufficient to establish a constitutional right to privacy." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014); *In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of unique device identifier number, personal data, and geolocation information did not constitute an egregious breach of privacy). "[T]he collection and disclosure of a user's browsing history and personal information on a public website is 'routine commercial behavior'" and does not violate a protectable privacy interest. *Cousin*, 2023 WL 4484441, at *6 (quoting *Low v. LinkedIn Corp.*, 900 F.

Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of user's browsing history URLs and unique ID to third party was not highly offensive)).

### D.    Garland Alleges No Loss Or Damages

#### 1.    Garland Lacks Statutory Standing Under The UCL

Garland's UCL claim (Claim 3) fails for lack of statutory standing. To allege statutory standing under the UCL, an individual must "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition," Cal. Bus & Prof. Code § 17204, meaning Plaintiffs must "demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (2011). This requirement is stringent, requiring that a plaintiff's "'injury in fact' specifically involve 'lost money or property.'" *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1348 n.31 (2009).

Garland does not "plausibly allege that [she] intended to sell [her] . . . personal information . . . or . . . that someone else would have bought it"—rather, she alleges that she did <u>not</u> intend for whatever information 7 Cups acquired to be shared (despite their notice of, and alleged reliance on, of 7 Cups's 2017 Privacy Policy when they enrolled on the Platform, which disclosed that it may use data for marketing purposes (RJN, Ex. 1 at 3-4). *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784, 804 (N.D. Cal. 2019) ("Regarding loss of value, although it's true that each user's information is worth a certain amount of money to Facebook and the companies Facebook gave it to, it does not follow that the same information, when not disclosed, has independent economic value to an individual user"). Her suggestion of a diminution in value of data is "purely hypothetical" and cannot supply statutory standing under the UCL. *In re Facebook, Inc.*, 402 F. Supp. 3d at 804; *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (loss of "property value in one's information, do[es] not suffice as injury under the UCL"); *In re iPhone Application Litig.*, 2011 WL 4403963, at *5, 10 (no standing because plaintiffs had not alleged "any damage" by claiming defendant allowed third parties to collect "personal information," without any additional harm from that collection).

Plaintiffs' "allegations here do not include sufficient information from which the Court can plausibly infer the data allegedly misappropriated likewise had an economic value of which [they] w[ere] deprived as a result of [7 Cups'] actions." *James v. Allstate Ins. Co.*, No. 3:23-CV-01931-JSC, 2023 WL 8879246, at *7 (N.D. Cal. Dec. 22, 2023).

1

### 2. Plaintiffs Allege No Loss Under The CDAFA

Plaintiffs also fail to plead any cognizable "damage or loss" resulting from any alleged violation of the CDAFA (Claim 6). *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014) (Plaintiffs must plead some injury *emanating from* [defendant]'s alleged Section 502 violations."). The CDAFA provides a cause of action to only "the owner or lessee of the computer, computer system, computer network, computer program, or data *who suffers damage or loss*" that is "*by reason of* a violation." Cal. Penal Code § 502(e)(1). Courts have required plaintiffs to plead that they "have suffered [ ] tangible harm" that results from the alleged Section 502 violations. *Perkins*, 53 F. Supp. 3d at 1219; *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1071 (N.D. Cal. 2018) (dismissing CDAFA claim where "defendants have not plausibly alleged that accessing the types of information secured by Synopsys—IP addresses, MAC addresses, user names, host names, user accounts, email addresses, [ ]—caused economic damage to defendants"); *NovelPoster*, 140 F. Supp. 3d at 958 n.4 ("Damage or loss is only relevant to NovelPoster's CDAFA claims *if it was caused* by defendants' violation of" the CDAFA") (emphasis added).

As explained, *supra* IV(C) & (D)(1), Plaintiffs allege no harm *whatsoever*, let alone a harm traceable to the alleged "access" of their devices. Cal Penal Code § 502(c). Courts have expressly rejected the theory that a violation of an intangible alleged privacy right (which is also implausible here) can support a claim under the CDAFA: They "offer no support for their theories that the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data . . . is 'damage or loss' within the meaning of the CDAFA." *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (citing *Nowak v. Xapo, Inc.*, No. 5:20-cv-03643-BLF, 2020 WL 6822888, at *4-5 (N.D. Cal. Nov. 20, 2020) (lost value of stolen cryptocurrency because not cognizable loss under CDAFA)).

### 3. Garland Alleges No Damages To Support Contract And Misrepresentation Claims

"Damages is an element of [ ] negligent misrepresentation" (Claim 4). *Lewis v. Wachovia Mortg.*, No. 11-CV-122-H (RBB), 2011 WL 13356106, at *4 (S.D. Cal. June 6, 2011). Further, a breach of contract claim (Claim 10) must include the essential element of damages. *See, e.g.*, *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("a breach of contract claim requires a showing of appreciable and actual damage."). Even assuming that Garland was induced into using the Platform based

on 7 Cups's alleged misrepresentation or breached contractual terms, she alleges no damages. Garland claims to have never paid anything to 7 Cups. FAC ¶¶ 47-54. She also claims no harm from the "targeted advertisements" for which she seeks to assign blame to 7 Cups. *Id.* ¶ 52.

### E.    Plaintiffs' Adequate Remedy At Law Forecloses Their UCL And CLRA Claims

Plaintiffs' UCL and CLRA claims (Claim 3 and 9) should also be dismissed because they claim a right to statutory and actual damages (under the CIPA, CDAFA, CMIA and for an alleged invasion of privacy, breach of contract and misrepresentation), providing her an adequate remedy at law that precludes her from obtaining equitable relief under the UCL. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844-45 (9th Cir. 2020) (plaintiffs must establish that they lack "an adequate remedy at law before securing equitable restitution for past harm under the UCL"); *Weizman v. Talkspace, Inc.*, No. 23-CV-00912-PCP, 2023 WL 8461173, at *4 (N.D. Cal. Dec. 6, 2023) (Pitts, J.) ("courts in this District have generally required that plaintiffs at least allege the lack of a remedy at law when asserting a UCL claim. . . . The Court agrees with this approach."). Under the UCL and CLRA, "[p]revailing plaintiffs are [] limited to injunctive relief and restitution." *Korea Supply Co. v. LockheedMartin Corp.*, 29 Cal. 4th 1134, 1144 (2003); *see Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992) ("Damages are not available" under the UCL); *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014) ("[T]he remedy for a UCL violation is either injunctive relief or restitution.").

The Ninth Circuit Court of Appeals has affirmed that "a federal court's equitable authority remains cabined to the traditional powers exercised by English courts of equity, even for claims arising under state law," which requires that "'[e]quitable relief in a federal court is of course subject to restrictions: . . . a plain, adequate and complete remedy at law must be wanting . . . .'" *Sonner*, 971 F.3d at 840 (quoting *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105-06 (1945)). Here, Plaintiffs have wholly failed to allege that the remedies available to them at law in the form of actual and/or statutory damages would be inadequate to remedy whatever harms—assuming they have any, which 7 Cups disputes—they have suffered. This deficiency is fatal to Plaintiffs' claims under the UCL and CLRA, because the Ninth Circuit requires her to allege that a "*plain, adequate and complete remedy at law must be wanting.*" *Sonner*, 971 F.3d at 840; *see Gardiner v. Walmart, Inc.*, 20-CV-04618-JSW, 2021 WL 4992539, at *7 (N.D. Cal. July 28, 2021) (dismissing claims for equitable relief arising from an alleged data breach because "an injunction

requiring Defendant to improve its security procedures in the future would not provide relief for injuries arising out of a past data breach. As to potential future breaches, Plaintiff offers no explanation why monetary damages would not provide adequate relief for purported future harms"); *In re Apple Processor Litig.*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) ("'*Sonner*'s holding applies to equitable UCL claims when there is a viable CLRA damages claim, regardless of' the facts. [ ] Plaintiffs were obligated to *allege* that they had no adequate legal remedy in order to state a claim for equitable relief (quoting *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308 (9th Cir. 2022) (applying *Sonner* to CLRA claim). "The issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy. On that point, *Sonner* holds that it does not." *Shay v. Apple Inc.*, 20CV1629-GPC(BLM), 2021 WL 1733385, at *3 (S.D. Cal. May 3, 2021).

### F.   Plaintiffs Fail To State A Claim Under The CIPA

Plaintiffs' CIPA Section 631 claim fails on multiple grounds. <u>*First*</u>, Section 631 only prohibits the unauthorized "interception" of a communication. *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQM-MDD, 2020 WL 1984062 at *7 (S.D. Cal. April 7, 2020); Cal. Penal Code § 631(a). For a communication "to be intercepted in violation" of the Federal Wiretap Act (CIPA's federal analogue),[5] "it must be acquired during transmission, not while in electronic storage." *Konop*, 302 F.3d at 878. Plaintiffs allege no non-conclusory facts that suggest an acquisition contemporaneous with transmission. *Id*; *see* FAC ¶ 165 ("By its use of Google's software, Defendant aided and abetted Google to intercept and eavesdrop upon such conversations in real time"). Plaintiffs' recitation of the conclusory allegation that an interception occurred "in real time" or "contemporaneously" is not enough. *Id* ¶ 34, 165; *Rosenow*, 2020 WL 1984062, at *7 (allegation that defendant used an "algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit and before placing them in electronic storage" failed to state a claim); *Quigley v. Yelp*, No. 17-CV-03771-IRS, 2018 WL 7204066 at *4 (N.D. Cal. Jan 22, 2018) (dismissing Wiretap Act claims where plaintiff did not "allege with particularity how or when defendant became aware of her

---

[5]     "[I]ntercept" under the Wiretap Act, 18 U.S.C. § 2510(4) and "in transit" under CIPA are interpreted coextensively. *Underhill v. Kornblum*, No. 16-CV-1598-AJB-WVG, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

1    communications"). In fact, Plaintiffs' allegations confirm that Google allegedly acquired their interactions

2    <u>after</u> they were entered on the 7 Cups's Platform, which is not an interception. *See* FAC ¶¶ 36-37 (7 Cups

3    "is sharing" information with Google after users enter it); *Rosenow*, 2020 WL 1984062, at *7.

4        <u>*Second*</u>, Plaintiffs have not alleged that any "contents" were shared without their permission. The

5    Wiretap Act and CIPA § 631 only prohibit the unlawful interception of the "contents" of a communication.

6    *Brodsky*, 445 F. Supp. 3d at 127. "[C]ontents" are "any information concerning the substance, purport, or

7    meaning of [a] communication." 18 U.S.C. § 2510(8); *Brodsky*, 445 F. Supp. 3d at 127; *Graham*, 533 F.

8    Supp. 3d at 833 ("The 'contents' of a communication under CIPA and the Federal Wiretap Act are the

9    same."). "Mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff[s], and

10   pages and content viewed by Plaintiff[s] [are] precisely the type of . . . information that courts consistently

11   find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs." *Jacome v. Spirit*

12   *Airlines Inc*., No. 2021-000947-CA-01, 2021 WL 3087860, at *4 (Fla. Cir. Ct. June 17, 2021) (collecting

13   authorities); *see In re Zynga*, 750 F.3d at 1107 ("location of a webpage a user is viewing on the internet"

14   not "contents"); *see also, e.g.*, *Graham*, 533 F. Supp. 3d at 833 (names, addresses, customer identities, are

15   not "contents"). Here, the only data Plaintiffs claim Google Analytics is capable of acquiring—page clicks

16   and queries or selections from a pre-populated list (*id*. ¶¶ 1, 23-24, 35-42)—is not actionable. *See Cousin*,

17   2023 WL 4484441, at *3, *9 ("While Plaintiffs provide an example of a search by a hypothetical patient,

18   they fail to state what information they each provided to Defendant, via their browsing activity, that was

19   subsequently disclosed to Meta.") ("Plaintiffs do not provide sufficient factual support to plausibly claim

20   their content was intercepted by Meta"); *Cook*, at *7-8 ("mouse movements and clicks, keystrokes, and

21   URLs of web pages visited" are not "contents" under Pennsylvania's CIPA analogue).[6]

22        <u>*Third*</u>, CIPA § 631(a) does not prohibit a party to a communication from recording it, and there can

23   be no aiding-and-abetting liability where an online platform like 7 Cups uses analytics software as a tool

24   to improve the functionality of the platform. "Section 631 was aimed at one aspect of the privacy

25   problem—eavesdropping, or the secret monitoring of conversations by *third parties*." *Ribas v. Clark*, 38

26

27       ⁶      Like the CIPA, *see Graham*, 533 F. Supp. 3d at 833, the Pennsylvania Wiretapping and Electronic

28   Surveillance Control Act defines "contents" of a communication as including "any information concerning the *substance, purport, or meaning of that communication*." 18 Pa. Cons. Stat. § 5702 (emphasis added).

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

Cal. 3d 355, 359 (1985). "*Only* a *third party* can listen to a conversation secretly . . . . By contrast, a party to a communication can record it (and is not eavesdropping when it does)." *Graham*, 533 F. Supp. 3d at 831 (emphasis added); *see also, e.g.*, *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (Section 631 "has been held to apply only to eavesdropping by a third party and *not to recording by a participant to a conversation*."). Plaintiffs allege no facts that plausibly establish Google Analytics was anything other than a tool used by 7 Cups for 7 Cups's *own* purposes. Plaintiffs allege that data sent to Google Analytics was used so 7 Cups can "track site visitors' actions" for advertising purposes. FAC ¶ 25; RJN, Ex. 5, 42 ("Google Analytics gives you the tools, free of charge, to understand the customer journey"). Courts have held that exactly this kind of allegation establishes that a software provider is more akin to a tape recorder than an eavesdropper, and cannot support a claim under § 631. *Licea v. Cinmar, LLC*, No. CV 22-6454-MWF (JEM), 2023 WL 2415592, at *8 (C.D. Cal. Mar. 7, 2023) (allegations that provider eavesdropped on communications to "harvest data from those conversations for financial gain" did not establish eavesdropping); *Williams v. DDR Media, LLC*, No. 22-CV-03789-SI, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023) ("Jornaya has merely recorded the communication for retrieval by a party to the same communication. Thus, [ ] Jornaya is more akin to a tape recorder vendor than an eavesdropper.").

### G.  Plaintiffs Have No Claim Under The CMIA

Plaintiffs fail to allege a claim under the CMIA (Claim 8) because they do not allege that 7 Cups disclosed information regarding their medical history, condition, or treatment. *Eisenhower Med. Ctr.*, 226 Cal. App. 4th at 434. "Under the CMIA a prohibited release" must include more than "*individually identifiable information*" and "*must also include information relating to medical history, mental or physical condition, or treatment of the individual.*" *Id*. at 437 (emphasis added).

The <u>only</u> information that Plaintiffs plausibly allege could have been collected from them was the time they chatted on the Platform and the name of a selected therapist or listener. FAC ¶¶ 1, 23-24, 35-42. Courts have rejected this information as non-actionable under the CMIA. *Wilson v. Rater8, LLC*, 20-CV-1515-DMS-LL, 2021 WL 4865930, at *4–5 (S.D. Cal. Oct. 18, 2021) (plaintiff's "name, cellular telephone number, '*treating physician names*, medical treatment appointment information, and medical treatment *discharge dates and times*'" not "medical information" under CMIA (emphasis added)); *Erhart v. Bofl Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017) (allegation that defendant received information

that plaintiff "*was seeking an appointment with his physician to discuss a medical leave of absence*" not "medical information" under the CMIA). "It is clear from the plain meaning of the [CMIA] that medical information cannot mean just any patient-related information held by a health care provider, but must . . . include a patient's medical history, mental or physical condition, or treatment." *Eisenhower Med. Ctr.*, 226 Cal. App. 4th at 435; *see also, e.g.*, *Erhart*, 269 F. Supp. 3d at, 1078 ("medical information" can include information from provider's "written evaluation," or "medical records, [or] a medical certification").

Moreover, "medical information" as defined under the CMIA must be "*in possession of* or *derived from* a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i) (emphasis added). "Medical information" does not extend to searches for medical conditions or self-diagnosed general statements about a person's health from other sources, *i.e.*, users themselves. *Erhart*, 269 F. Supp. 3d at 1078 (dismissing a CMIA claim where the information came from the plaintiff, who "called off sick" and noted "he was seeking an appointment with his physician to discuss a medical leave of absence," which did not constitute "medical information"). Because Plaintiffs do not allege the release of any information that plausibly constitute medical information under the CMIA, they fail to state a claim for relief. *Id.*

### H.   Plaintiffs Have Not Alleged An Unauthorized Access Under The CDAFA

The CDAFA (Claim 6) prohibits only the unauthorized access to "lawfully created computer data and computer systems." Cal. Penal Code § 502(c). Section 502(c) permits civil liability only if a computer system is accessed "without permission" (i.e., broken into) by an outsider. *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34 (2007) ("Section 502 defines 'access' in terms redolent of 'hacking' or breaking into a computer"). "[U]sing a computer network for the purpose that it was designed to serve, even if in a manner that is otherwise improper, is not the kind of behavior that the legislature sought to prohibit" and does not constitute acting "without permission." *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *7 (N.D. Cal. July 20, 2010). In defining an access "without permission" under the CDAFA, "most courts have followed [*Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *7 (N.D. Cal. July 20, 2010)]" and find that the statute only applies to the circumvention of a "technical or code-based barrier" that restricts or bars access. *NovelPoster*, 140 F. Supp. 3d at 966 (citing *People v. Childs,* 220 Cal. App. 4th 1079 (2013)] as holding that the CDAFA requires the

same circumvention of a technical or code based-barrier as the CFAA). Moreover, "access" requires more than mere "use": it mandates that an individual or entity "gain entry to . . . the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." Cal. Penal Code § 502(b)(1). As the California Court of Appeal has observed, "Section 502 defines 'access' in terms redolent of 'hacking' or breaking into a computer." *Chrisman*, 155 Cal. App. 4th at 34.

Here, Plaintiffs allege no actionable "access" by Google Analytics' software onto their devices; rather, they concede that their data was voluntarily transmitted to 7 Cups, which used Google Analytics to analyze their interactions <u>after</u> they used 7 Cups's Platform. FAC ¶¶ 33-34. Indeed, they allege that Google Analytics is a "tracking" code only "embedded in [7 Cups'] <u>Platform</u>," not Plaintiffs' devices. *Id*. ¶ 27. This is not an unauthorized access under the CDAFA.

## I.     Plaintiffs Fail To State A Claim For Negligent Misrepresentation

Plaintiffs have failed to plead negligent misrepresentation (Claim 4) with particularity. *Lazar*, 12 Cal. 4th at 645 (must plead with particularity "facts which show how, when, where, to whom, and by what means the representations were tendered."); *see also Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 216 (1983) (applying heightened particularity requirements to negligent misrepresentation claim); *Foster v. Sexton*, 61 Cal. App. 5th 998, 1028 (2021) ("For policy reasons, some causes of action, such as fraud and negligent misrepresentation, must be pleaded with particularity . . . .").

Plaintiffs claim that 7 Cups made a misrepresentation to them in its Privacy Policy, FAC ¶¶ 132-37, but as users of the Platform for over 6 years, they fail to allege *which statement* in *which Privacy Policy* they relied upon that was allegedly untrue. Clearly they did not rely on 7 Cups's 2022 Privacy Policy quoted in paragraph 21 of the FAC when they became users in 2017. For similar reasons, Plaintiffs fail to allege how 7 Cups made any misrepresentation to them. Even assuming Plaintiffs implausibly relied on the statement in 7 Cups's current Privacy Policy that it will "not share your personal Information with other businesses for marketing purposes," FAC ¶ 22, as discussed above, Plaintiffs' only allegations regarding marketing in the FAC arise from discussions in chat or therapy conversations, *id*. ¶¶ 52, 61, which they do not allege 7 Cups's shared. *Id*. ¶¶ 1, 23-24, 35-42. Plaintiffs have not plead their misrepresentation claims with particularity, and it should be dismissed.  *Scott v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 743, 766 (2013) (demurrer sustained where plaintiff "pleaded in generalities, without identifying the

1  precise statements made, or the dates on which they were made").

2  **J.      Plaintiffs Have No Implied Contract Claim**

3          Plaintiffs attempt to shoehorn 7 Cups's current Privacy Policy terms as an "express" claim of an

4  "implied" contract, *see Unilab Corp. v. Angeles-IPA*, 244 Cal. App. 4th 622 (2016) ("an implied-in-fact

5  contract requires an ascertained agreement of the parties."), but they do not allege that they ever agreed to

6  or even acknowledged the current Privacy Policy. *See supra* IV(I). The Privacy Policy they apparently

7  relied upon when first enrolling in 2017 (*id*. ¶¶ 49, 58) expressly disclosed the use of cookies like Google

8  Analytics and the collection of the interactions allegedly transmitted here. *Compare id.* ¶¶ 1, 23-24, 36 *with*

9  RJN, Ex. 1 at 3-4 ("We log web browser information (e.g., [IP] addresses [ ]) and other usage information

10  . . . such as page view tallies, time spent on each page, geographic location information, page browsing

11  information, [and] subject matter browsing information") ("We use browser information, cookies and pixel

12  tags to determine whether a communication service or marketing material should be deployed on your

13  browser" and "to determine how you arrived at 7 Cups [ ] Platform[ ] . . . to deliver marketing or other

14  materials to you on behalf of third parties[.]"). Their implied contract claim fails to allege the most basic

15  "substance of [the contract's] relevant terms." *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972,

16  994 (2013).

17  **K.      Unjust Enrichment Is Not A Cause Of Action**

18          Unjust enrichment (Claim 5) "is not a cause of action." *De Havilland*, 21 Cal. App. 5th at 870.

19  **L.      Plaintiffs' Consent Bars Their Claims**

20          Plaintiffs' undisputed notice of 7 Cups's Privacy Policy and use of 7 Cups's Platform thereafter

21  establishes their consent to the conduct they complain of, and their consent is dispositive of their claims.

22  FAC ¶¶ 49, 58, 212, 214. "Consent may be express or may be implied in fact from the surrounding

23  circumstances indicating that the party to the call knowingly agreed to the surveillance." *Moledina v.*

24  *Marriott Int'l, Inc.*, No. 222CV03059SPGJPR, 2022 WL 16630276, *7 (C.D. Cal. Oct. 17, 2022). "Courts

25  consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct

26  challenged under various states' wiretapping statutes and related claims." *Silver v. Stripe Inc.*, No. 4:20-

27  cv-01896-YGR, No. 4:20-cv-01896-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing

28

CIPA claims based on consent to privacy policy).[7]

Plaintiffs allege that when they enrolled on the Platform in 2017, they relied on 7 Cups's Privacy Policy, which explicitly informed them that:

> We log web browser information (e.g., [IP] addresses [ ]) and other usage information from 7 Cups[ ] Platform such as page view tallies, time spent on each page, [ ] page browsing information, [and] subject matter browsing information;

> We use browser information, cookies and pixel tags to determine whether a communication service or marketing material should be deployed on your browser; and

> We may also use browser information, cookies and pixel tags: . . . to administer and optimize our services, to deliver marketing or other materials to you on behalf of third parties[.]

RJN, Ex. 1 at 1-2.

By relying on the Privacy Policy when they first enrolled (FAC ¶¶ 49, 58, 204, 212, 214), Plaintiffs at least implicitly consented to 7 Cups's collection of their interactions and use of that information "to deliver marketing or other materials to you . . . ." *Moledina*, 2022 WL 16630276, *7. Given these relied-upon disclosures, "the Court is hard-pressed to find that Plaintiff[s] [were] not aware that [their] interactions with the [Platform] were being monitored." *Jacome*, 2021 WL 3087860, at *7; *Smith*, 745 F. App'x at 8; *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *12-13 (N.D. Cal. Sept. 26, 2013) (finding implied consent where party had "adequate notice of the interception"). Their consent requires dismissal of their claims.

## V.    CONCLUSION

7 Cups respectfully requests that the Court dismiss the First Amended Complaint and deny Plaintiffs leave to amend.

DATED: January 26, 2024          Respectfully submitted,

**GREENBERG TRAURIG, LLP**

---

[7]      *See also Garcia v. Enter Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135-37 (N.D. Cal. 2015) (dismissing CIPA claim where app provider's terms and privacy policy disclosed the alleged collection of interactions); *Snipes v. Wilkie*, No. 18-cv-03259-TSH, 2019 WL 1283936 at *6 (N.D. Cal. Mar. 20, 2019) ("Effective consent negates an intrusion upon seclusion claim."); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 n.3 (N.D. Cal. 2021) ("consent is a defense to Plaintiffs' UCL claim"); *Smith*, 745 F. App'x at 8 ("Plaintiffs' consent . . . bars their common-law tort claims").

_/s/ Rebekah S. Guyon_
Rebekah S. Guyon (SBN 291037)
_GuyonR@gtlaw.com_
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700

_Attorneys for Defendant 7 Cups of Tea, Co._

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT